FILED
**January 16, 2015**
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-14-00117-CV
3807595
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/16/2015 11:44:13 PM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00117-CV

# IN THE COURT OF APPEALS FOR THE
# THIRD COURT OF APPEALS DISTRICT OF TEXAS
# AT AUSTIN

## NASH JESUS GONZALES
## AND GONZALES & GONZALES, P.C.,

### APPELLANTS

### v.

## MARISSA ANN GONZALES,

### APPELLEES

From the 200th District Court , Travis County Texas
The Honorable Lora J. Livingston, Presiding
Trial Court No. D-1-FM-11-005140

## NASH JESUS GONZALES AND GONZALES & GONZALES, P.C.'S
## APPELLANTS' BRIEF

Thomas B. Cowart          Wasoff & Cowart, P.L.L.C.
Texas Bar No. 00787295    100 North Central Expressway, Suite 901
tom@tcowart.com           Richardson, Texas 75080
                          Tel:  (214) 692-9700
                          Fax:  (214) 550-2674


Attorneys for Appellants Nash Jesus Gonzales
and Gonzales & Gonzales, P.C.

### ORAL ARGUMENT REQUESTED

**January 16, 2015**

# IDENTITY OF PARTIES AND COUNSEL

Appellants:                              Nash Jesus Gonzales
Gonzales & Gonzales, P.C.

Counsel for Appellants:

    On Appeal:                  Thomas B. Cowart
Texas Bar No. 00787295
Wasoff & Cowart, P.L.L.C.
100 North Central Expressway, Suite 901
Richardson, Texas 75080
Tel: (214) 692-9700
Fax: (214) 550-2674
tom@tcowart.com

    At Trial:                       Cecilia M. Wood
State Bar No. 21885100
Attorney and Counselor at Law, P. C.
1122 Colorado Street, Suite 100B
Austin, Texas 78701
Telephone: 512-708-8783
Facsimile: 512-708-8787

Laura Martinez,
State Bar No. 13142705
2221 Hancock Drive
Austin, Texas 78756
(512) 535-3322

Appellee:                            Marissa Ann Gonzales

Counsel for Appellee:

    On Appeal and At Trial       Michael Burnett
Texas Bar No. 00780399
Jeff Miller
Texas Bar No. 24008714
Armbrust & Brown, PLLC

100 Congress Ave., Suite 1300
Austin, Texas 78701
Phone: 512-435-2315
Fax: 512-435-2360
E-mail: mburnett@abaustin.com

# TABLE OF CONTENTS

Identity of Parties and Counsel. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Index of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

Issues Presented.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

     Issue 1.     Should the Trial Court have granted Appellant a new trial because the jury's verdict on the geographic restriction on the children's principal residence is unsupported by any evidence? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

     Issue 2.     Did the Trial Court abuse its discretion by including the individual assets (or former assets) of the parties' dissolved partnership in the community estate?.. . . . . . . . . . . . . . . . . . . . x

     Issue 3.     Did the Trial Court abuse its discretion by imposing a fee division among attorneys that is contrary to the Rules of Professional Conduct?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

     Issue 4.     If the Trial Court properly included the partnership assets in the community estate, did it nevertheless abuse its discretion in dividing those assets because its ruling is not supported by an adequate evidentiary basis? . . . . . . . . . . . . . x

     Issue 5.     Did the Trial Court abuse its discretion by dividing the former spouses separate property future earnings as part of the community estate?. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.      The Trial Court erred by rendering judgment on the basis of a jury verdict which was not supported by legally or factually sufficient evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

A.      The jury's decision is subject to challenge on the basis of the sufficiency of the evidence to support the verdict. . . . . . . . . . . . . . . 7

B.      There is a complete absence of evidence that allowing relocation anywhere within the State of Texas is in the best interest of the children . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1.      Dr. Alissa Sherry. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        2.      Nash Gonzales. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        3.      Marissa Gonzales. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        4.      Other witnesses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        5.      Closing argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

C.      To the extent the "best interest factors" were addressed in the evidence, none of it supports a Texas wide restriction. . . . . . . . . . . 14

D.      There is no evidence in this record supporting the jury's verdict and the judgment should be reversed and remanded for a new trial on the geographic restriction issue. . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II.     The Trial Court erred and abused its discretion in its treatment of the inventory of cases previously held by the Partnership. . . . . . . . . . . . . . . . 16

A.      The Trial Court, not the jury, considered all property issues involved in the divorce. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

B.      The Trial Court's inclusion of the fees flowing from the Partnership cases in the community estate was a clear error of law and so an abuse of discretion. . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

1. Because the partners do not have an ownership interest in partnership assets, the interest in the cases could never be part of the community estate. . . . . . . . . . . . . . . . . . . . . . . . 25

2. After the Partnership withdrew from the cases there was no fee interest left to be divided as a matter of law. . . . . . . . . 27

3. In addition, the Trial Court's ruling is contrary to the evidence as the Partnership contracts tracked this provision of Texas law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

4. Because the Trial Court erroneously included the fee interest in the Partnership's former inventory of cases in the community estate, the property division must be set aside and remanded. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

C. The Trial Court's order to divide the fees among attorneys who are not in the same firm without client consent is void as against public policy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

D. The Trial Court's division of the fee generated by the "Bucket 2" cases is not supported by the evidence and so is an abuse of discretion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

E. The Trial Court's attempt to divide the Bucket 3 cases fee is erroneous as it divides future income which is not part of the community estate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Appendix. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

# INDEX OF AUTHORITIES

**Cases**                                                                 **Page Nos.**

*Augustson v. Linea Aerea Nacional-Chile S.A.*,
    76 F.3d 658 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Bader v. Cox*,
    701 S.W.2d 677 (Tex. App. 5th Dist. 1985, writ ref'd n.r.e). . . . . . . . . . . . . . 34

*Bocquet v. Herring*,
    972 S.W.2d 19 (Tex. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Counsel Financial Services, L.L.C. v. Leibowitz*,
    2013 WL 3895331 (Tex. App.–Corpus Christi 2013, pet. denied). . . . . . . . . . 30

*Cruse v. O'Quinn*,
    273 S.W.3d 766 (Tex. App.–Houston [14[th] Dist.] 2008, pet. denied). . . . . . . . 30

*Davis Law Firm v. Bates*,
    2014 WL 585855 (Tex. App.–Corpus Christi 2014, no pet.). . . . . . . . . . . . . . 30

*Deinhart v. McGrath-Stroatman*,
    2010 WL 4595708 (Tex. App.–Austin 2010, pet. denied). . . . . . . . . . . . 7, 8, 16

*Destec Energy, Inc. v. Houston Lighting & Power Co.*,
    966 S.W.2d 792 (Tex. App.–Austin 1998, no pet.). . . . . . . . . . . . . . . . . . . . 25

*Diaz v. Attorney General of State of Tex.*,
    827 S.W.2d 19 (Tex. App.–Corpus Christi 1992, no writ) . . . . . . . . . . . . . . . 27

*French v. Law Offices of Windle Turley, P.C.*,
    2010 WL 744794 (Tex. App.–Fort Worth, 2010, no pet.) . . . . . . . . . . . . . . . 27

*Giesler v. Giesler*,
    2010 WL 2330362 (Tex. App.–Austin 2010, no pet.). . . . . . . . . . . . . . . . . . 31

*In re Lovell-Osburn*,
    2014 WL 4931302 (Tex. App.–Houston [14[th] Dist.] 2014, no pet.). . . . . . . . . 30

*In re Texas Dep't of Family & Protective Servs.*,
   210 S.W.3d 609 (Tex. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Jackson v. Jackson*,
   2011 WL 3373290 (Tex. App.–Austin 2011, no pet.). . . . . . . . . . . . . . 26, 31, 33

*Lenz v. Lenz*,
   79 S.W.3d 10 (Tex. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Mandell v. Mandell,*
   310 S.W.3d 531 (Tex. App.–Fort Worth 2010, pet. denied). . . . . . . . . 26, 33, 34

*Marshall v. Marshall*,
   735 S.W.2d 587 (Tex. App.–Dallas 1987, writ ref'd n.r.e.). . . . . . . . . . . . . . 26

*McFadden v. Deedler*,
   2014 WL 4364540 (Tex. App.–Austin 2014, no pet.). . . . . . . . . . . . . . . . . . 25

*Rodgers v. Rodgers*,
   2014 WL 1604332 (Tex. App.–Amarillo 2014, no pet.). . . . . . . . . . . . . . . . . 33

*Royden v. Ardoin*,
   331 S.W.2d 206 (Tex. 1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Smith v. Smith*,
   836 S.W.2d 688 (Tex. App.–Houston [1st Dist.] 1992, no pet.). . . . . . . . . . . 33

*Stanley v. Reef Secs., Inc.*,
   314 S.W.3d 659 (Tex. App.–Dallas 2010, no pet.). . . . . . . . . . . . . . . . . . . . 26

*Staples v. McKnight*,
   763 S.W.2d 914 (Tex. App.–Dallas 1988, writ denied) . . . . . . . . . . . . . . . . 28

*Von Hohn v. Von Hohn*,
   260 S.W.3d 631 (Tex. App.–Tyler 2008, no pet.). . . . . . . . . . . . . . . . . . . 33, 34

*Williams v. Sinclair–Prairie Oil Co.*,
   135 S.W.2d 211, 216 (Tex. Civ. App.–Texarkana 1939,
   writ dism'd judgm't cor.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Yasin v. Yasin*,
    2011 WL 5009895 (Tex. App.–Austin 2011, no pet.).. . . . . . . . . . . . . . . . . . 7

*Young v. Young,*
    168 S.W.3d 276 (Tex. App.–Dallas 2005, no pet.). . . . . . . . . . . . . . . . . . . . 26

**Statutes and Rules**                                         **Page Nos.**

TEX. BUS. ORG. CODE ANN. § 152.056
    (Westlaw 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

TEX. BUS. ORG. CODE ANN. § 152.101
    (Westlaw 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

TEX. DISCIPLINARY RULES OF PROF. 1 CONDUCT R. 1.04(f),
    reprinted in Tex. Gov't. Code Ann., tit. 2, subtit. G, app. A
    (West 2013) (Tex. State Bar R. art. X, § 9). . . . . . . . . . . . . . . . . . . . . . . . 31

TEX. FAM. CODE ANN. § 153.001
    (Westlaw 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TEX. FAM. CODE. ANN. § 105.002
    (Westlaw 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## STATEMENT OF THE CASE

This appeal arises out of a divorce and child custody/support suit (CR 6). The issues of conservatorship, the right to designate the children's primary residence, and any geographic restriction on that residence were tried to a jury (CR 342). Based on the jury's verdict, the Trial Court rendered judgment naming Nash Gonzales and Marissa Gonzales joint managing conservators and awarding Marissa Gonzales the exclusive right to designate the primary residence of their two children restricted to the entire State of Texas (CR 680, 682). All property issues were presented for decision to the Trial Court (XV RR 4) and the judgment included the Trial Court's division of the community estate (CR 702). After their joint Motion for New Trial and to Reconsider (CR 715) was denied by operation of law, Appellants brought this appeal to challenge the provisions of the judgment rendered by the Trial Court (CR 730).

## STATEMENT REGARDING ORAL ARGUMENT

Appellants believe that the Court's decisional process would be aided by holding oral argument in this matter because the Record is extensive and the issues require both a thorough examination of the lengthy record on the one hand and the application of multiple legal principles on the other, both areas which Appellants believe discussion with Counsel would be beneficial.

# ISSUES PRESENTED

Issue 1.    Should the Trial Court have granted Appellant a new trial because the jury's verdict on the geographic restriction on the children's principal residence is unsupported by any evidence?

Issue 2.    Did the Trial Court abuse its discretion by including the individual assets (or former assets) of the parties' dissolved partnership in the community estate?

Issue 3.    Did the Trial Court abuse its discretion by imposing a fee division among attorneys that is contrary to the Rules of Professional Conduct?

Issue 4.    If the Trial Court properly included the partnership assets in the community estate, did it nevertheless abuse its discretion in dividing those assets because its ruling is not supported by an adequate evidentiary basis?

Issue 5.    Did the Trial Court abuse its discretion by dividing the former spouses separate property future earnings as part of the community estate?

## STATEMENT OF FACTS

This proceeding involves the end of two partnerships, one matrimonial, one professional. Although the record is lengthy and the proceedings complicated, for the purposes of the issues presented on appeal, the decisional facts necessary for Court's consideration are comparatively narrow. Those facts, though, are more efficiently examined in the context of the issues to which they relate and so Appellants present only an overview of the factual matters at this point, reserving the more detail discussion for the analysis of the issues below.

The parties, Nash Gonzales and Marissa Maggio, are both practicing attorneys (VI RR 76). They met while taking the bar exam preparation class in Austin, Texas in 1996 (VI RR 17). After falling in love and getting married, they began their professional careers and family life in Austin, creating the law firm of Gonzales & Gonzales, GP (referred to here as "the Partnership") and having two children, B.G., born in 2005 and G.G., born in 2008 (VI RR 18, 41-43). In both of these areas, Nash and Marissa experienced success, creating both a vibrant, growing personal injury practice sufficient to support and amply provide for the family and nurturing the children they had brought into the world.

Ultimately, Marissa determined that the problems she saw in the marriage outweighed the good that she found in it and filed for divorce (CR 6). In her pleadings, Marissa requested that she be named sole managing conservator of the

couple's two children, that she be allowed to designate their primary residence, and that there be no geographic restriction on the location where she could designate that residence (CR 283). Nash, on the other hand, asked that the parties be named joint managing conservators of the children, that he be allowed to designate their primary residence, and that the children's residence be restricted to Travis County, Texas (CR 189). Marissa also asked for a disproportionate division of the parties' community property while Nash asked simply for a just and right division of the community estate (CR 283-84; 190-91).

On Nash's request (CR 184; III RR 17), the court empaneled a jury to hear the parties' dispute (IV RR 42). Although Marissa had pled a number of tort/commercial claims against both Nash and Appellant Gonzales & Gonzales, P.C. pertaining to the dissolution of the Partnership (CR 286-288), ultimately the jury was called upon to decide only the conservatorship, residence, and geographic restrictions issues (CR 347-350, 679). By its verdict, the jury determined that Marissa and Nash should be appointed joint managing conservators of the children, that Marissa should have the right to designate the primary residence of the children, and that the children's primary residence should be restricted to anywhere in the State of Texas (CR 347-350).

Although the jury's verdict disposed of the conservatorship issues, it did not address any part of the controversy between Nash and Marissa regarding the

disposition of their property (apparently because the parties agreed to withdraw any "property issues" from the jury and submit them to the Court for decision (XIII RR 97-98; XIV RR 75-76; XV RR 4)). The primary issues in contention concerned the inventory of cases once held by the parties' law practice partnership, Gonzales & Gonzales, GP (XIII RR 83-84). There were two primary questions that consumed the Trial Court's and the parties' energy in wrestling with the Partnership issue.

First, the parties clashed over the characterization of the fee interest in the inventory of cases. The Partnership almost exclusively handled personal injury cases on a contingent fee basis (V RR 87-88). In May 2012, during the pendency of the divorce action, by Rule 11 Agreement, the Partnership was dissolved and its clients given the option of choosing an attorney to retain to handle the matter going forward (CR 136). As part of that Agreement, a letter signed by both Nash and Marissa was sent to each of the Partnership's clients, notifying them of the dissolution–that Nash and Marissa were separating their practices–and asking the client to choose new counsel–Nash at his new practice, Marissa, or a different attorney or firm altogether–to proceed with the case (CR 520; XV RR 20). This letter was signed by both Nash and Marissa (CR 521; XV RR 20). Nash and Gonzalez & Gonzalez, P.C. contended that the withdrawal of the Partnership from representing these clients terminated any potential claims the parties might have to the fee from the cases and that these individual cases were never part of the community estate, as they were

property of the partnership, not Nash or Marissa individually, under partnership principles (CR 503-527; XV RR 17-24). Marissa, on the other hand, asserted that the parties had an interest in the individual cases that required division by the Trial Court (XV RR 28).

The second issue involved a methodology for valuing the parties' interests in the individual cases, should the Trial Court determine that the value was subject to division. Nash contended that the Trial Court could not divide the unrealized fee for cases that were still pending at the time of the divorce but if it could, it was required to give the attorney who worked the case a greater percentage of the fee (XV RR 31). Marissa, on the other hand, asserted that she still had a direct interest in the fee generated by each case no matter when the case was resolved or how much post-divorce effort was required to handle the case and that the fee was required to be divided 50/50 (XIII RR 93-95).

Ultimately, the Trial Court ruled that the cases were community property and divided the value of the cases as part of its "just and right" allocation of the parties' community estate, ordering that the fee generated from each individual file be split between Nash and Marissa, 60/40 with the handling party getting a 60% share of the fee (CR 541, 703-705).

Appellants challenged the Trial Court's acceptance of the jury's verdict on the evidence presented during the trial and its rulings on the disposition of the

Partnership issues through a variety of methods, including ultimately in their Second Motion for New Trial (CR 715) filed after the Court rendered the Amended/Corrected Final Decree of Divorce (CR 679). That motion was overruled by operation of law and Appellants timely brought this appeal to challenge the Trial Court's rulings on these matters (CR 730).

## SUMMARY OF ARGUMENT

Nash first brings a challenge to the sufficiency of the evidence to support the jury's verdict on the geographic restriction on the primary residence of the children. All of the evidence and argument presented by the parties were directed to only two choices for this restriction–Travis County, Texas or no restriction at all so that Marissa Gonzales was free to move to the New York state area to be closer to her family of origin. It was never suggested by evidence or argument that it would be in the children's best interest to allow Marissa to move them out of Austin to anywhere in Texas. The first and only time that this restriction was suggested at any point in the trial was by the jury's verdict. There is no evidence in this record supporting the jury's decision and so the judgment based on that verdict must be set aside.

Secondly, both Appellants assert that the Trial Court erred in its treatment of the individual cases making up the inventory of the parties' dissolved law practice. On the parties' agreement, the Partnership was dissolved and its interest in the individual client files relinquished. Thus, there was nothing left to divide from a

partnership perspective. And the Court cannot divide the fruits of the parties' post-divorce effort as part of the division of the community estate. Because there was no evidence that the community estate had any claim to any value represented by the individual cases, the Trial Court abused its discretion by including those items in its judgment. In addition, the Trial Court abused its discretion by dividing the total fee generated from the files thereby depriving Gonzales & Gonzales, GP, a stranger to the marriage, of its property right to the fee in the cases that it handled.

## ARGUMENT

There are two areas in the Trial Court's judgment being challenged here. Each will be analyzed in turn.

### I. *The Trial Court erred by rendering judgment on the basis of a jury verdict which was not supported by legally or factually sufficient evidence*

Appellant Nash Gonzales first challenges the sufficiency of the evidence to support the jury's verdict on the geographic restriction to be placed on the children's primary residence. As he will show, the jury's verdict on this issue is subject to review for evidentiary support and that support is lacking. As a result, the Trial Court's judgment should be reversed and this matter remanded for a new trial on this issue.

**A. The jury's decision is subject to challenge on the basis of the sufficiency of the evidence to support the verdict**

The Family Code allows for a party to request a jury trial on the question of a geographic restriction to be placed on the primary residence of a child after a divorce. TEX. FAM. CODE. ANN. § 105.002(c)(1)(E), (F) (Westlaw 2015). Although section 105.002(c)(1) provides that "the court may not contravene a jury verdict" on the geographic restriction, *id.,* the jury's verdict is subject to the usual requirements that the finding be supported by the pleadings and the evidence. *Lenz v. Lenz*, 79 S.W.3d 10, 19 -21 (Tex. 2002); *Deinhart v. McGrath-Stroatman*, 2010 WL 4595708, 5 -8 (Tex. App.–Austin 2010, pet. denied); *see also Yasin v. Yasin*, 2011 WL 5009895 (Tex. App.–Austin 2011, no pet.). When considering a challenge to the evidence supporting a jury verdict on a residency restriction, this Court should "view the evidence produced relevant to the best-interest factors in a light that tends to support the jury's verdict." *Lenz*, 79 S.W.3d at 17. As explained by this Court, those "best-interest factors" are:

> (1) the reasons for and against the move, including the parents' good faith motives in requesting or opposing it; (2) comparison of education, health, and leisure opportunities; (3) the degree of economic, emotional, and educational enhancement for the custodial parent and the child; (4) the effect on extended family relationships; (5) accommodation of the child's special needs or talents; (6) the effect on visitation and communication with the noncustodial parent to maintain a full and continuous relationship with the child; (7) the possibility of a visitation schedule allowing the continuation of a meaningful relationship between the noncustodial parent and the child; and (8) the noncustodial parent's ability to relocate.

*Deinhart*, 2010 WL 4595708, *6 (citing *Lenz*, 79 S.W.3d at 15-16). The ultimate question is whether there was sufficient evidence adduced that would allow reasonable and fair minded people to reach the finding arrived at by the jury. *Id*. at *7.

### B. *There is a complete absence of evidence that allowing relocation anywhere within the State of Texas is in the best interest of the children*

From beginning to end of the jury trial of this matter, all of the evidence and argument was directed to the children either living in Travis County or in New York (or possibly Connecticut). No witness, no document, and no argument supports the jury's verdict on the geographic restriction, as a thorough review of the record demonstrates.

### 1. *Dr. Alissa Sherry*

The first witnesses to testify was Dr. Alissa Sherry, a psychologist agreed to by the parties to do a custody evaluation in this case (IV RR 59-60, 64). Among other issues, she was tasked with analyzing whether a move to New York would be in the best interest of the children (IV RR 68). In her testimony, Dr. Sherry unambiguously concluded that allowing the children to relocate to New York would be in their best interest (IV RR 178-192) testifying that Marissa's desire to move was not motivated by an intent to hurt Nash (IV RR 180), that the educational and extra circular opportunities for the children would be equal between New York and "here" (IV RR

182), that the children would benefit from having access to Marissa's extended family in New York (IV RR 182-183), and that the proposed move to New York was a developmentally opportune time in the children's lives (IV RR 183-184). She agreed that it was best interest of the children for them to move to New York (IV RR 192-193).

On cross examination, Dr. Sherry stoutly defended her opinion that the children would benefit from moving to New York (V RR 180-189), explicitly comparing and contrasting it to Austin. Not once in Dr. Sherry's testimony did she consider a restriction to any location other than Austin or New York. In fact, at no point was she asked to consider or testify concerning a residence for the children other than New York or Austin.

### 2. *Nash Gonzales*

Nash Gonzales, called out of order as Marissa's second witness, also testified about the children's best interest with respect to the location of their residence. He testified that if Marissa chose to move to New York it would be in the children's best interest, "based on the support I have here," for the children to stay with him in Austin (V RR 33). He acknowledged that Marissa was born and raised in New York, that they were married in New York, that Marissa's extended family lives in New York, that the children had spent holidays and summer weekends in New York, (V RR 34-36), but that "it's not in the best interest of the boys to move to New York" (V

RR 41). In conclusion, Nash was clear: "Well, I -- I want the boys to stay in Austin, Texas or Travis County" (V RR 248).

Recalled in his own case in chief, Nash again testified repeatedly that he didn't believe it was in the children's best interest to move to New York (VIII RR 166) stressing how important it is that the children be restricted to a specific county (VIII 166-168) as it was not in their best interest for him to have to follow Marissa around:

> Q. Okay. And were you trying to pin down -- like, are you -- do you think that it's in the boys' best interest for you to have to follow Mrs. Gonzales from place to place and pick up and move and get another job every time she changes her mind or she gets a different job?
>
> A. No. And I wanted the boys to have consistency and I wanted to be close by. And I knew that, especially with drop offs and pick ups, I wanted to know how we were going to do it and where it would be done because it was already difficult with my sister just being in the middle. I was imagining, what is it going to be like if I'm in upper New York State and Marissa's in lower New York State? How am I going to get my Thursday possession? I wanted to know what county.

(VIII CR 167-68). He also summarized what made Austin a better choice for the children's residence than New York:

> This is our home, this has been our home, and this is what -- all the boys know. They were both born here, they're Austinites, and they love their cousins --they were with their cousins yesterday. They -- that's all they know.

(VIII CR 168).

He went on to identify what his sons would lose if they were to move to New York:

> Q . . . . Okay. List all of the things that the children are going to lose if they move to New York.

A. They're going to miss Alexa.

Q. Who's Alexa?

A. Their cousin, Alexa . . . my sister's daughter. They're going to miss Cousin Natalie, they're going to miss Cousin David. They're going to miss Cousin Elena, they're going to miss Cousin Steven, they're going to miss Aunt Deana, that Uncle Stevie, Aunt Elsa, Uncle JT, they're going to miss Eric, they're going to miss Uncle Lupe, they're going to miss all of these people -- they're going to miss Logan. They're going to miss all of these friends -- Zach, you know, just all these friends that they have here. And, you know, the environment -- I mean also it's very different. I mean, we have different weather, different pace of life, you know. I -- it makes me sad to imagine them living in bunk beds and I love Helen and I think she's a wonderful grandmother, and I love Joe. I don't think he's such a wonderful grandfather, but I do not -- I know that my boys would be miserable in that -- in that -- on bunk beds in Orange County without me there. That would be a sad, sad scene and they would be very distressed.

Q. You pointed out here to Eric; who are these people that have been coming in every day during this trial?

A. Family, friends, church members, prayer warriors. I have my Uncle Lupe who's one of 11. He's the eldest of 11 children. My mother's brother, Eric – he's like a brother to me.

Q. And is this your support system here?

A. Yes.

Q. And is this the system that helps you parent these boys?

A. (Nodding head up and down.)

(VIII RR 168-170).  At no point was Nash asked to consider or testify concerning a residence for the children other than New York or Austin.

### 3. *Marissa Gonzales*

Marissa also testified extensively about the choice between New York and Austin. She indicated that she had been born in New York and had moved to Austin to run track while at the University of Texas (VI RR 17). She explained the plan she had laid and the preparations she had made in anticipation of moving with the children to New York (VI RR 24-33; VII RR 50-55), including that she could live rent free with her parents at a place familiar to the children (VI RR 26-27), that she had a school picked out for them (VI RR 29), had a pediatrician picked out for them (VI RR 30), that she was licensed in New York and Connecticut (VI RR 31), and that she had several employment opportunities already waiting for her in New York, including a "friend [who] is a partner in a personal injury firm [who] said if you're able to come up here, we're going to make room for you" (VI RR 32). She indicated that her plan to move to New York was in the best interest of the children (VI RR 122). Just as with Nash, at no point was Marissa asked to consider or testify concerning a residence for the children other than New York or Austin.

### 4. *Other witnesses*

Other witnesses also testified about the comparison between New York and Austin for the children's residence. Helen Maggio, Marissa's mother and the children's grandmother, explained that a move to New York "would be a very easy transition for [the children] because they're very familiar with the area and with the

things that they have there" (VI RR 132). Dina Law, Nash's sister, testified that the younger children on Nash's side of the family have a "[v]ery powerful, very loving" relationship (IX RR 98) and that she agreed with Nash that the children would be best off in Austin (IX RR 100-101). Elsa Finnen, another of Nash's sisters, testified that her daughters, who are close in age to Nash and Marissa's sons, "adore their boys" and two of the cousins "are practically twins" (IX RR 103). None of these witnesses mentioned any location for the children's residence other than New York or Austin.

### 5. *Closing argument*

Finally, the parties' positions and the relevant evidence is highlighted by the closing arguments presented by Marissa and Nash. Marissa stressed Dr. Sherry's opinion that "it's in the best interests of the children to allow her to move up to New York" (XII RR 15; also XII RR 18, 26, 45), compared the family support Marissa could find in Austin to the support she would enjoy in New York (XII RR 17), and stressed that Marissa was "not taking [the children] to some strange place" (XII RR 18). Marissa urged the jury not to make her "stay in Austin" but to "let her move up to New York, like Dr. Sherry recommends" (XII RR 26).

Nash, on the other hand, urged the jury to restrict Marissa's ability to move with the children:

> If you give her the primary residence, that's not a problem, but don't give her an unlimited geographic restriction. Make her stay in Travis County. Because today it's New York and tomorrow it's Connecticut, because that's a possibility. I mean, she has this job lead, but then she posted this

website just three weeks ago -- she told you he'd given her almost $80,000 in an eight and-a-half month period but she didn't have the website to post until just a few weeks ago, and she's got an Austin office, so she can stay here and maybe start building a practice in Connecticut, maybe they can come up with a game plan, or in New York. Or, if she has no geographic restriction she can take them out of the country. And what is he supposed to do? Is he supposed to pick up and follow them here and then she has -- Dr. Sherry says she has this trial and error approach, follow them there. Keep these children here.

(XII RR 41).

In short, this trial was focused on two choices, Austin or New York, not "some strange place" anywhere in Texas. There is no evidence in the record justifying or even addressing any other location in Texas as an appropriate restriction on the children's residence.

### C. To the extent the "best interest factors" were addressed in the evidence, none of it supports a Texas wide restriction

Specifically addressing the *Lenz* best interest factors, no evidence supplies any support for a Texas state wide geographic restriction on even one of those factors, as summarized in this chart:

| factor | Evidence addressing Austin | Evidence addressing New York | Evidence addressing all of Texas |
|---|---|---|---|
| Motivation for location | V RR 186, 188-89 VIII RR 168-170 | IV RR 180–181 V RR 188-189 | |
| Comparison of opportunities | IV RR 182 | IV RR 182 | |
| enchantment opportunities | IV RR 182 | IV RR 182 | |

| extended family relationships | IV RR 183<br>V RR 33, 184, 186, 188, 236 | IV 182-183, 192<br>V 35-36, 180-183, 188<br>VI RR 28 | |
|---|---|---|---|
| accommodation of needs and talents | VIII 161-162, 164 | IV RR 183-184<br>V RR 181 | |
| effect on noncustodial relationship | V RR 33, 186 | IV RR 179, 192<br>V RR 58-60, 185, 187 | |
| visitation schedule | VIII RR 150 | V 58-60, 187-188 | |
| noncustodial parent's ability to relocate | V RR 225, 239, 249 | V RR 225, 227, 233-234, 239, 249 | |

The blanks on the far right of this table are critically important. There is no evidence in this record supporting a conclusion that a Texas-wide geographic restriction is in the best interest of the children. The jury's verdict should have been set aside.

> **D.** ***There is no evidence in this record supporting the jury's verdict and the judgment should be reversed and remanded for a new trial on the geographic restriction issue***

As shown here, because there is a complete absence of evidence to show that a Texas wide geographic restriction is in the best interest of Marissa and Nash's children, the jury's verdict is not supported by legally sufficient evidence. As a result, the Trial Court's judgment violates both the primary "best interest of the children" requirement and Texas's public policy supporting the parent-child relationship as expressed in section 153.001 of the Texas Family Code. TEX. FAM.

CODE ANN. § 153.001 (Westlaw 2015); *Deinhart*, 2010 WL 4595708, *6. The judgment must be set aside and this matter remanded for a new trial on the geographic restriction issue.

## II. *The Trial Court erred and abused its discretion in its treatment of the inventory of cases previously held by the Partnership*

The second area challenged in this appeal involves the Trial Court's treatment of the inventory of cases formerly held by the parties' law practice partnership. As Appellants will show here, those cases were never part of the parties' community estate and so the Trial Court should not have included any fees generated by the individual case in its "just and right" division of the parties' property. To the extent that the fee interest in the files were once Partnership assets that may have been subject to the Trial Court's judgment, the Partnership gave up its interests in the fees when it voluntarily withdrew from the cases and so, again, there was no Partnership interest to be divided by the Trial Court by the time of the divorce. And, in fact, by attempting to divide the gross fee of the individual files, the Trial Court improperly deprived Gonzales & Gonzales, P.C. of its interest in that fee. And, finally, to the extent that any of the fees could be characterized as community property, there is no evidence in this record to support the Trial Court's conclusion that all of the fee should be included in the community estate for division.

### A. The Trial Court, not the jury, considered all property issues involved in the divorce

Apparently the parties agreed to withdraw any "property issues" from the jury and submit them to the Court for decision (XIII RR 97-98; XIV RR 75-76; XV RR 4)). On this record, this would include any of the tort and commercial claims pled in Marissa's Seventh Amended Petition for Divorce and Suit for Damages (CR 281) her live pleading on the day on the day of trial and throughout the remainder of the proceedings. Ultimately, the Trial Court did not grant Marissa any relief on any of the pleaded civil causes of action, choosing instead to resolve all property issues through its "just and right" division of the community estate (CR 702-705, 712).

The post-verdict effort to address the division of the parties' property took up some of the first post-verdict hearing (XIII RR 81 to end) and all of the second two post-verdict hearings (XIV RR & VX RR). In considering the issue of the Partnership's inventory of cases, the Trial Court and the parties referred to the cases as being in different "buckets" (XIII RR 84-92). The different buckets were identified as:

Bucket 1: entire universe of Partnership cases on the date of dissolution of the Partnership (XIII RR 84-85);

Bucket 2: cases resolved and on which income was received after the date of dissolution of the Partnership (May 30, 2012) but prior to the divorce judgment (XIII RR 85);

Bucket 3: cases still pending as of the divorce judgment (XIII RR 87);

Bucket 4:    cases originated by Nash after the dissolution of the Partnership through his new practice, Gonzales & Gonzales, GP (XIII RR 90);

Bucket 5:    cases originated by Marissa after the dissolution of the Partnership through her new practice (XIII RR 92).

Under this scheme, the Trial Court and the parties were able to narrow the matters in dispute to the Bucket 2 and Bucket 3 cases only (XIII RR 102). That was because the Bucket 2 and Bucket 3 cases were subsets of the Bucket 1 cases and represented the only cases on the Bucket 1 list that required allocation; all of the other Bucket 1 cases that did not appear in the 2 or 3 Buckets had been concluded and the fees divided by the parties prior to the dissolution of the Partnership (XIII RR 101). Buckets 4 and 5, which represented cases opened by the parties individually after the Partnership was dissolved, were agreed to be treated as the separate property of the party who was working the case (XIII 99-101) and were recognized as separate property in the divorce decree (CR 704 ( H-11), 705 ( W-11)). Buckets 2 and 3 were the focus of the  property dispute.

Ultimately, Bucket 2 became Court's Exhibit 8 (XX RR Ct. Ex. 8 (.pdf page 26)) and Bucket 3 became Court's Exhibit 9 (XX RR Ct. Ex. 9 (.pdf page 65)), as introduced into evidence at the April 1, 2013 hearing (XIV RR 21, 25). Marissa continued to contend that she maintained an interest in the individual cases past the Partnership's dissolution and withdrawal from the files (XIV RR 70-71, 80-81, 84-85). Nash, proceeding pro se at this point, did not address the issue directly at this

hearing but his questioning of Marissa made plain his continued opposition to her claims.

The final substantive hearing on the Partnership issue was held on April 10, 2013 (XV RR 1, 7). Nash, again represented by counsel, provided his "Brief in Support of Respondent's Valuation of Gonzales and Gonzales, General Partnership" with attached exhibits, to the Trial Court (which the Trial Court acknowledged and indicated would be considered) (XV RR 17, 23, 24). Nash also orally presented the arguments regarding the Partnership to the Trial Court at this hearing, asserting that after dissolution of the Partnership and the voluntarily relinquishment of the representation in favor of the client's chosen attorney, as to the Bucket 3 cases (pending, not resolved) "neither of these parties owns those cases" but that the cases were "owned by the new partnership" (XV RR 20). Thus, because the cases were "not community property, it's not divisible by the Court" (XV RR 21). Nash also argued that Marissa's claim to an interest in the cases was improper because it violated the prohibition of fee sharing in the Rules of Professional Conduct and because the cases were not "assets owned by these individuals" (XV RR 21).

The Trial Court acknowledged that it understood Nash's argument:

The question you raise is whether or not those cases are still considered part of the marital estate. And that is just an issue that's in dispute, which we've talked about a number of times. But that's really the question.

And your argument is, as I understand it, which is the same argument that Mr. Gonzales has advanced for a long time now, is that they're not. I get that. Anything else?

But, I mean, that's where -- that's what we've been fighting about. That's -- that's what we fight about at every hearing.

. . .

So we've been around and around on this issue a number of times. And I'm just going to have to decide it at some point, which I will do. But it's not a novel argument this time.

(XV RR 22, 23).

When offered the opportunity to respond, Marissa simply reiterated her position that the cases were "assets of the partnership" (XV RR 28), asserted that she was entitled to a $45,000 award as a division of the Bucket 2 cases (pending at dissolution, resolved before the divorce decree) and suggested that the Bucket 3 case fees should be divided 55/45, with the handling attorney receiving 55% of the fee generated by the file (XV RR 29-3).

Ultimately, the Trial Court issued a letter announcing its decision on the property issues (CR 531). With regard to the Partnership issues, the Trial Court initially indicated that it was awarding Nash "60% of the Gonzales & Gonzales, GP matters after dissolution that are pending/not settled ('Bucket 3')" and Marissa "40% of the Gonzales & Gonzales, GP matters after dissolution that are pending/not settled ('Bucket 3')" (CR 531). Responding to a letter from Marissa asking for clarification (CR 536), the Trial Court indicated that with respect to the Bucket 3 cases (pending

not resolved) it "intend[ed] that the party that retained the case and worked it to conclusion get 60% and the other party get 40%" and with respect to the Bucket 2 cases (pending at dissolution, resolved before divorce decree) cases "the parties will split the net proceeds equally" (CR 541).

These rulings were incorporated into the divorce decree through the Trial Court's division of the marital estate, both in its award of property and its assignment of debt:

Division of Marital Estate

The Court finds that the following is a just and right division of the parties' marital estate having due regard for the rights of each party and the children of the marriage.

Property to Husband

IT IS ORDERED AND DECREED that the husband, NASH JESUS GONZALES, is awarded the following as his sole and separate property, and the wife is divested of all right, title, interest, and claim in and to that property:
. . .
H-7. Fifty percent (50%) of any fees earned on the Gonzales & Gonzales, GP cases which were settled or resolved prior to the date of dissolution of the marriage, which is February 25, 2013. This share shall be calculated after the party who advanced the out-of-pocket case expenses is reimbursed. However, in the event he expense was paid by Gonzales & Gonzales, GP, then such case expense amount shall be paid fifty percent (50%) to NASH JESUS GONZALES and fifty percent (50%) to MARISSA ANN GONZALES.

H-8. Sixty percent (60%) of any fees earned on the Gonzales & Gonzales, GP unsettled cases retained by NASH JESUS GONZALES after dissolution of Gonzales & Gonzales, GP which were not settled or resolved as of the date of dissolution of the marriage, which is February 25, 2013. This share shall be calculated after the party who advanced the out-of-pocket cases expenses is reimbursed. However, in the event he expense was paid by Gonzales &

Gonzales, GP, then such case expense amount shall be paid fifty percent (50%) to NASH JESUS GONZALES and fifty percent (50%) to MARISSA ANN GONZALES.

H-9. Forty percent (40%) of any fees earned on the Gonzales & Gonzales, GP unsettled cases retained by MARISSA GONZALES after dissolution of Gonzales & Gonzales, GP which were not settled or resolved as of the date of dissolution of the marriage, which is February 25, 2013. This share shall be calculated after the party who advanced the out-of-pocket cases expenses is reimbursed. However, in the event he expense was paid by Gonzales & Gonzales, GP, then such case expense amount shall be paid fifty percent (50%) to NASH JESUS GONZALES and fifty percent (50%) to MARISSA ANN GONZALES.

H-10. Fifty percent (50%) of any fees earned on the Gonzales & Gonzales, GP unsettled cases which were referred to another attorney for handling. This share shall be calculated after the party who advanced the out-of-pocket expense is reimbursed. However, in the event the expense was paid by Gonzales & Gonzales, GP, then such expense amount shall be paid fifty percent (50%) to NASH JESUS GONZALES and fifty percent (50%) to MARISSA GONZALES.

H-11. Subject to the property division set out in the foregoing H-7 through H-10, NASH JESUS GONZALES is awarded as his separate property his new law firm, Gonzales & Gonzales, P.C. However, nothing in this paragraph shall be interpreted to modify the property division set out in paragraphs H-7 through H-10.

Property to Wife

IT IS ORDERED AND DECREED that the wife, MARISSA ANN GONZALES, is awarded the following as her sole and separate property, and the husband is divested of all right, title, interest, and claim in and to that property:

. . .

W-7. Fifty percent (50%) of any fees earned on the Gonzales & Gonzales, GP cases which were settled or resolved prior to the date of dissolution of the marriage, which is February 25, 2013. This share shall be calculated after the party who advanced the out-of-pocket case expenses is reimbursed. However, in the event he expense was paid by Gonzales & Gonzales, GP, then such case

expense amount shall be paid fifty percent (50%) to NASH JESUS GONZALES and fifty percent (50%) to MARISSA ANN GONZALES.

W-8. Forty percent (40%) of any fees earned on the Gonzales & Gonzales, GP unsettled cases retained by NASH JESUS GONZALES after dissolution of Gonzales & Gonzales, GP which were not settled or resolved as of the date of dissolution of the marriage, which is February 25, 2013. This share shall be calculated after the party who advanced the out-of-pocket cases expenses is reimbursed. However, in the event he expense was paid by Gonzales & Gonzales, GP, then such case expense amount shall be paid fifty percent (50%) to NASH JESUS GONZALES and fifty percent (50%) to MARISSA ANN GONZALES.

W-9. Sixty percent (60%) of any fees earned on the Gonzales & Gonzales, GP unsettled cases retained by MARISSA GONZALES after dissolution of Gonzales & Gonzales, GP which were not settled or resolved as of the date of dissolution of the marriage, which is February 25, 2013. This share shall be calculated after the party who advanced the out-of-pocket cases expenses is reimbursed. However, in the event he expense was paid by Gonzales & Gonzales, GP, then such case expense amount shall be paid fifty percent (50%) to NASH JESUS GONZALES and fifty percent (50%) to MARISSA ANN GONZALES.

W-10. Fifty percent (50%) of any fees earned on the Gonzales & Gonzales, GP unsettled cases which were referred to another attorney for handling. This share shall be calculated after the party who advanced the out-of-pocket expense is reimbursed. However, in the event the expense was paid by Gonzales & Gonzales, GP, then such expense amount shall be paid fifty percent (50%) to NASH JESUS GONZALES and fifty percent (50%) to MARISSA GONZALES.

W-11. Subject to the property division set out in the foregoing W-7 through W-10, MARISSA GONZALES is awarded as his separate property her new law firm, the Law Offices of Marissa Maggio a/k/a the Law Offices of Marissa Maggio Gonzales. However, nothing in this paragraph shall be interpreted to modify the property division set out in paragraphs W-7 through W-10.

Division of Debt

Debts to Husband

IT IS ORDERED AND DECREED that the husband, NASH JESUS GONZALES, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge, these items:

. . .

H-3. The sum of $44,815.39 to MARRISA GONZALES for her equal share of the net proceeds of the Gonzales & Gonzales, GP cases settled after dissolution of Gonzales & Gonzales, GP and prior to the dissolution of the marriage, which is February 25, 2013.

(CR 702-706).

As Appellants Nash and Gonzales & Gonzales, P.C. will show, these orders constitute an abuse of the Trial Court's discretion as the orders are legally erroneous and not supported by any evidence.

### B. The Trial Court's inclusion of the fees flowing from the Partnership cases in the community estate was a clear error of law and so an abuse of discretion

First, both Nash and Gonzales & Gonzales, P.C., contend that the Trial Court committed a clear error of law when it included the Partnership's former cases fees in the community estate. This is error for two distinct reasons. First, the interest in the individual cases themselves, and so the fees flowing from that interest, was never in the community estate as the individual partners do not have an ownership interest in specific partnership assets–only the partner's interest in the partnership *itself* is personal property and so potentially a part of the community estate. Secondly, even if the ownership of the individual partnership assets somehow poured into the

community estate, when the Partnership voluntarily withdrew from the cases and turned the representation back to the clients for choosing another attorney, the Partnership forfeited its fee interest in those cases as a matter of law and under the Partnership's contract with the clients.

A trial court that fails to properly analyze and apply the law has committed an abuse of discretion. *In re Texas Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 612 (Tex. 2006); *McFadden v. Deedler*, 2014 WL 4364540, 1 -2 (Tex. App.–Austin 2014, no pet.). The Trial Court did so here and its decision on the fee interest in the files ought to be set aside.

> **1.      *Because the partners do not have an ownership interest in partnership assets, the interest in the cases could never be part of the community estate***

First, the Trial Court could not divide the value of the individual files as these interest were *never* part of the community estate. Texas has adopted the entity theory as to partnerships; any transfer of assets, money, property or liabilities between the GP and the individual partners is a transfer between separate entities. This is both codified and affirmed in case law. TEX. BUS. ORG. CODE ANN. § 152.056 (Westlaw 2015) ("A partnership is an entity distinct from its partners"); *see also Destec Energy, Inc. v. Houston Lighting & Power Co.*, 966 S.W.2d 792, 795 (Tex. App.–Austin 1998, no pet.).

"Partnership property is not property of the partners. A partner or a partner's spouse does not have an interest in partnership property." TEX. BUS. ORG. CODE ANN. § 152.101 (Westlaw 2015). The Courts have interpreted this to mean that a "'partnership interest' is not an interest in any specific partnership property. Instead, it is the partner's right to receive his distributive share of the profits and surpluses of the partnership." *Stanley v. Reef Secs., Inc.*, 314 S.W.3d 659, 664 (Tex. App.–Dallas 2010, no pet.). Specifically applicable here, is that "individual assets owned by the partnership are not owned by the partners. Consequently partnership property can be characterized as neither community or separate property." *Marshall v. Marshall*, 735 S.W.2d 587, 594 (Tex. App.–Dallas 1987, writ ref'd n.r.e.); also *Young v. Young,* 168 S.W.3d 276, 287 (Tex. App.–Dallas 2005, no pet.).

The evidence in this record makes clear that the cases at issue were Gonzales & Gonzales, GP assets–that is, the interest in the file for attorney's fees was unambiguously a partnership asset (V RR 85-114; VI RR 77-109, 165-182; XIII RR 84-92). As a result, this interest was never part of the community estate. *Young,* 168 S.W.3d at 287; *Marshall,* 735 S.W.2d at 594. The Trial Court could only divide property owned by the community estate, it was not permitted to reach outside that estate and divide property owned by others. *Jackson v. Jackson*, 2011 WL 3373290, 2 -3 (Tex. App.–Austin 2011, no pet.); *Mandell v. Mandell,* 310 S.W.3d 531, 539 (Tex. App.–Fort Worth 2010, pet. denied). The Trial Court's inclusion of the fee

interest in the individual files in the community estate is an error of law that constitutes an abuse of discretion.

### 2. *After the Partnership withdrew from the cases there was no fee interest left to be divided as a matter of law*

Even if the Partnership's interests were capable of being included in the community estate, by voluntarily withdrawing from the cases the Partnership relinquished any claim to that fee interest. Since at least 1960, Texas law has been "settled":

> the settled law is held to be that: 'If an attorney, without just cause, abandons his client before the proceeding for which he was retained has been conducted to its termination, or if such attorney commits a material breach of his contract of employment, he thereby forfeits all right to compensation.' *Mills v. Metropolitan St. Ry. Co.*, 282 Mo. 118, 221 S.W. 1; *Crye v. O'Neal & Allday*, Tex.Civ.App.1911, 135 S.W. 253 (no writ history); 7 C.J.S. Attorney and Client s 169, p. 1031; see also 45 A.L.R. p. 1135, Annotation, Attorneys-Compensation-Disbarment, and cases collated at p. 1138

*Royden v. Ardoin*, 331 S.W.2d 206, 209 (Tex. 1960). This legal principal has been recognized repeatedly by courts. *French v. Law Offices of Windle Turley, P.C.*, 2010 WL 744794, 3 n.21 (Tex. App.–Fort Worth, 2010, no pet.) (citing *Royden* as "stating that an attorney is not entitled to compensation when he abandons his client without just cause before the proceeding for which he was retained has been conducted to its termination"); *Diaz v. Attorney General of State of Tex.*, 827 S.W.2d 19, 22 -23 (Tex. App.–Corpus Christi 1992, no writ) ("When the attorney abandons the contract before completion without good cause the attorney forfeits his right to compensation under

the contract"); *Staples v. McKnight*, 763 S.W.2d 914, 916 (Tex. App.–Dallas 1988, writ denied) ("an attorney who abandons a case without just cause before completing the task for which his client hired him breaches his contract of employment and forfeits all right to compensation"); *Augustson v. Linea Aerea Nacional-Chile S.A.*, 76 F.3d 658, 662 (5th Cir. 1996) ("When an attorney, 'without just cause, abandons his client before the proceeding for which he was retained has been conducted to its termination, or if such attorney commits a material breach of his contract of employment, he thereby forfeits all right to compensation.'" (quoting *Royden*)).

The letter signed by both Nash and Marissa sent to all of Partnership's clients in the then-pending suits advised the clients that they would need to find a new attorney to carry on with their case (CR 520-521; XV RR 20). This constitutes the voluntary withdrawal from these cases by the Partnership and so is a waiver of any fee interest in the files the Partnership might have had. *Id*. Even if the value of the fee interest in these cases held by the Partnership could somehow be converted into an asset of the individual partners and so included in the community estate, that value, after May 31, 2012, was zero. The Trial Court's inclusion of any fee interest in the individual files in the community estate is an error of law that constitutes an abuse of discretion.

### 3. In addition, the Trial Court's ruling is contrary to the evidence as the Partnership contracts tracked this provision of Texas law

This result is also dictated by the form of the attorney/client contract adopted by the Partnership. The Partnership's standard contract contained a provision that mirrors Texas law on this issue:

> **No recovery.** In the event my attorney withdraws or is unable to obtain a recovery, there will be no charge for attorney fees and costs unless another agreement is made.

(CR 514). The contractual provision has the same effect as the "settled" Texas law and the Partnership waived its fee interest in these files by its withdrawal from the representation. The Trial Court's ruling otherwise is an abuse of its discretion and should be reversed.

### 4. Because the Trial Court erroneously included the fee interest in the Partnership's former inventory of cases in the community estate, the property division must be set aside and remanded

The Trial Court abused its discretion in including any of the fee interests in the Partnership's former inventory of cases, both the Bucket 2 (pending at dissolution, resolved before divorce) and Bucket 3 (pending at dissolution, not resolved), in the community estate as this was a clear error of law and contrary to the evidence. To correct this error, this Court should declare that these property interests are not included in the community estate and so cannot be part of the Trial Court's "just and right" division, reverse the Trial Court's property division, and remand that issue for further proceedings.

## C. The Trial Court's order to divide the fees among attorneys who are not in the same firm without client consent is void as against public policy

Secondly, the Trial Court's order cannot stand as it is clearly violative of public policy as expressed in the Texas Rules of Professional Conduct. The Rules of Professional Conduct are deemed to express the public policy of the State of Texas. *Cruse v. O'Quinn*, 273 S.W.3d 766, 775 (Tex. App.–Houston [14th Dist.] 2008, pet. denied). As a result, contracts that violate these Rules have been repeatedly voided and held unenforceable by Texas courts. *See e.g., Davis Law Firm v. Bates*, 2014 WL 585855, 3-4 (Tex. App.–Corpus Christi 2014, no pet.) (citing cases); *Counsel Financial Services, L.L.C. v. Leibowitz*, 2013 WL 3895331, 7 (Tex. App.–Corpus Christi 2013, pet. denied).

Judgments ought not to enforce void agreements. *See c.f. In re Lovell-Osburn*, 2014 WL 4931302, 5 (Tex. App.–Houston [14th Dist.] 2014, no pet.) (lower court erred in enforcing judgment incorporating MSA that had venue provision that was void as against public policy). And when a judgment is based on circumstances that violate public policy, that judgment may be declared void as against public policy. *See Williams v. Sinclair–Prairie Oil Co.*, 135 S.W.2d 211, 216 (Tex. Civ. App.–Texarkana 1939, writ dism'd judgm't cor.).

This Trial Court's division of the fee interest in these cases is plainly violative of Rule 1.04 of the Texas Rules of Professional Conduct, which requires that any division of a fee between lawyers not in the same firm must be approved by the client.

TEX. DISCIPLINARY RULES OF PROF. 1 CONDUCT R. 1.04(f), reprinted in Tex. Gov't. Code Ann., tit. 2, subtit. G, app. A (West 2013) (Tex. State Bar R. art. X, § 9). The Trial Court specifically rejected any suggestion that the clients would have a say in the division of the fee, squarely contrary to the provisions of this Rule (XV RR 21-22). This judgment flowed from this erroneous conclusion by the Trial Court.

This Trial Court's judgment seeks to enforce an arrangement that is prohibited by Texas public policy as expressed by the Texas Rules of Professional Conduct. The Trial Court's action in crafting and rendering such a judgment is an abuse of discretion that ought to be corrected by this Court. Thus, the Court should set aside the division of the fee interest in the Partnership's former cases, render judgment excluding those interests from the community estate, and remand this case for further proceedings.

**D.** ***The Trial Court's division of the fee generated by the "Bucket 2" cases is not supported by the evidence and so is an abuse of discretion***

The Trial Court's division of the community estate is tested under the abuse of discretion standard. *Jackson v. Jackson*, 2011 WL 3373290, 2 (Tex. App.–Austin 2011, no pet.). The Trial Court abuses its discretion if it rules without sufficient supporting evidence. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Giesler v. Giesler*, 2010 WL 2330362, 2 (Tex. App.–Austin 2010, no pet.). If this Court concludes that the fee interests in the Bucket 2 cases was divisible as part of the community estate (which it should not under the analysis set forth above), the Trial

Court's division of that fee interest is still an abuse of discretion as it is not based on sufficient evidentiary support.

When dividing the fee generated by the Bucket 2 cases (pending at dissolution, resolved before judgment), the Trial Court simply added up the total fee derived from the cases and divided it in two (CR 536-539, 706; XIV RR 80; XV RR 29-30; XX RR Ct. Ex. 8 (.pdf page 26)). There was no dispute that these cases had been picked up by another firm, Gonzales & Gonzales, P.C. for prosecution and that Gonzales & Gonzales, P.C. had an interest in the fee generated by the prosecution of the claims (VIII RR 68-72; XIV RR 97; CR 526). The evidence on which the Trial Court ruled, however, reflected only the total fee generated by the files-which is the property of Gonzalez & Gonzalez, P.C.–not the portion of the fee that Nash actually received as a distribution from the firm.

As a result, the Trial Court's attempt to divide the fee generated by the resolution of the Bucket 2 cases by awarding Marissa a lump sum payment from Nash in an amount equal to 50% of the total fee generated by the prosecution of the claims is not supported by the evidence. This ruling had the effect of making Nash pay to Marissa money that was never in his hands as he only had a claim to the portion of the fee that he received not to the entire fee generated by the case. Therefore, the Trial Court's division of the Bucket 2 cases fee, if properly included in the community estate at all, was an abuse of discretion as it was not supported by

sufficient evidence to establish the value of the community share of the fee. The lower court's ruling should be reversed and the case remanded for further proceedings.

**E.    *The Trial Court's attempt to divide the Bucket 3 cases fee is erroneous as it divides future income which is not part of the community estate***

Finally, the Trial Court abused its discretion when it ordered a division of the fee generated by the resolution of the Bucket 3 cases (pending at the time of dissolution, not resolved by the time of the decree) as it is a clear misapplication of the law. The Trial Court should only have divided property owned by the community estate at the time of the divorce. *Rodgers v. Rodgers*, 2014 WL 1604332, 3 (Tex. App.–Amarillo 2014, no pet.); *Jackson*, 2011 WL 3373290, *3. "A spouse is not entitled to a percentage of his or her spouse's future earnings." *Mandell v. Mandell*, 310 S.W.3d 531, 539 (Tex. App.–Fort Worth 2010, pet. denied) (citing *Von Hohn v. Von Hohn*, 260 S.W.3d 631, 640–41 (Tex. App.–Tyler 2008, no pet.)); *see also Smith v. Smith*, 836 S.W.2d 688, 692 (Tex. App.–Houston [1ˢᵗ Dist.] 1992, no pet.).

If the community estate had any claim on the future fees generated by the Bucket 3 cases, that claim must be based on the value of the cases at the time of the divorce. First, because the community estate does not include property owned by third parties, the interest in the fees generated owned by Gonzales & Gonzales, P.C. must be separated out of the total fee. No evidence was presented to the Trial Court allowing for this calculation. Second, because the amount of the fee "attributable to

the skill, time, efforts, and diligence" of the handling attorney after the dissolution is not part of the Partnership's interest, *see Bader v. Cox*, 701 S.W.2d 677, 684 (Tex. App. 5th Dist. 1985, writ ref'd n.r.e), and actually constitutes the separate property income of the former spouse, the Trial Court was required to further reduce the fee to be divided by this amount. Again, no evidence in the record supports the Trial Court's arbitrary allocation of the future fee for this purpose.

Nash's future earnings are his separate property which the Trial Court was not permitted to divide as part of its "just and right" allocation of the community estate. *Mandell*, 310 S.W.3d at 539. The Trial Court's division awarding Nash's future income to his ex-wife despite this prohibition is necessarily manifestly unjust. *Von Hohn*, 260 S.W.3d at 642. As a result, the Trial Court's division of the community estate must be set aside and this matter remanded for further proceedings.

## PRAYER

As shown here, the Trial Court erred when it rendered judgment on the basis of jury verdict that has no evidentiary support. Thus, Appellant Nash Gonzales respectfully requests that this Court reverse the Trial Court's December 9, 2013 Amended/Corrected Final Decree of Divorce and remand this action to the lower court for retrial of the area in which the children's residence must be confined. The Trial Court also abused its discretion when it sought to divide the fees generated by Gonzales & Gonzales, GP's former inventory of cases, as established above. Thus,

Appellants Nash Gonzales and Gonzales & Gonzales, P.C. also request that the Court reverse the Trial Court's division of the community estate, render judgment excluding those fees from the community estate, and remanding this matter for further proceedings consistent with the Court's opinion. Alternatively, if the Court concludes that the fee interests are properly included in the community estate, Appellants pray that the Court find the Trial Court's division is not based on sufficient evidence, reverse the division, and remand this suit for further proceedings. Appellants further pray that the Court award them judgment for all costs of appeal and any other and further relief to which they are justly entitled.

Respectfully submitted,

/s/ Thomas B. Cowart
Thomas B. Cowart
Texas Bar No. 00787295
tom@tcowart.com
Wasoff & Cowart, P.L.L.C.
100 North Central Expressway, Suite 901
Richardson, Texas 75080
Tel: (214) 692-9700
Fax: (214) 550-2674

Attorneys for Appellants Nash Gonzales and
Gonzales & Gonzales, P.C.

## CERTIFICATE OF COMPLIANCE

Relying on the word-count function in WordPerfect X5, I hereby certify that this entire Appellant's Brief, including the segments of this document which could be excluded in calculating the length of a document under Tex. R. App. P. 9.4(i)(1), contains 11,196 words.

/s/ Thomas B. Cowart

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2015 a true and correct copy of this Brief of Appellant has been served on the following via the efile system:

Michael Burnett
Armbrust & Brown, PLLC
100 Congress Ave., Suite 1300
Austin, Texas 78701
Phone: 512-435-2315
Fax: 512-435-2360
E-mail: mburnett@abaustin.com

Attorney for Appellee Marissa Ann Gonzales

/s/ Thomas B. Cowart
Thomas B. Cowart

NO. 03-14-00117-CV

IN THE COURT OF APPEALS FOR THE
THIRD COURT OF APPEALS DISTRICT OF TEXAS
AT AUSTIN

NASH JESUS GONZALES
AND GONZALES & GONZALES, P.C.,

APPELLANTS

v.

MARISSA ANN GONZALES,

APPELLEES

From the 200th District Court , Travis County Texas
The Honorable Lora J. Livingston, Presiding
Trial Court No. D-1-FM-11-005140

Nash Jesus Gonzales and Gonzales & Gonzales, P.C.'s
Appendix

Document

Jury Charge and Verdict                              CR 342

Amended/Corrected Final Decree of Divorce           CR 679

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| MARISSA ANN GONZALES | § | |
| AND | § | |
| NASH JESUS GONZALES | § | 200th JUDICIAL DISTRICT |

IN THE MATTER OF §  IN THE DISTRICT COURT
THE MARRIAGE OF §

MARISSA ANN GONZALES §
AND §
NASH JESUS GONZALES §  200th JUDICIAL DISTRICT

AND IN THE INTEREST OF §
B███ N██ G███████, §
AND G████ J████H G███████, §
MINOR CHILDREN §  TRAVIS COUNTY, TEXAS

## CHARGE OF THE COURT

LADIES AND GENTLEMEN OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your cell phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions:

Charge of the Court
Page 1

_Out to Deliberate_

Filed in The District Court
of Travis County, Texas

FEB 22 2013

At_____12:12 P.M.
Amalia Rodriguez-Mendoza, Clerk

_In with Verdict_

Filed in The District Court
of Travis County, Texas

FEB 22 2013

At_____4:25 P.M.
Amalia Rodriguez-Mendoza, Clerk

**ORIGINAL**

342

1.      Do not let bias, prejudice or sympathy play any part in your decision.

2.      Base your answers only on what was presented in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not presented in the courtroom.

3.      You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4.      If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5.      All the questions and answers are important. No one should say that any question or answer is not important.

6.      Answer "Yes" or "No" to all questions unless you are told otherwise. A "Yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "Yes" or "No," your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7.      Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8.      Do not answer questions by drawing straws or by any method of chance.

9.      Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10.      Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11.      Unless otherwise instructed, the answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

Charge of the Court
Page 2

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

The best interest of the child shall always be the primary consideration in determining questions of conservatorship.

In determining which party to appoint with the exclusive right to designate the primary residence, you shall consider the qualifications of each party without regard to the gender of the party or the child.

"Joint managing conservatorship" means the sharing of the rights and duties of a parent by *two parties*, even if the exclusive right to make certain decisions is awarded to one party. If joint managing conservators are appointed, the court will specify the rights and duties of a parent that are to be exercised by each parent independently, by the joint agreement of the parents, and exclusively by one parent.

Joint managing conservatorship does not require the award of equal or nearly equal periods of physical possession of and access to the child to each of the joint conservators. If joint managing conservators are appointed, you will be asked to decide which joint managing conservator will have the exclusive right to designate the child's primary residence, whether a geographical restriction should be imposed on that residence, and, if so, what the geographical restriction will be.

The appointment of joint managing conservators does not impair or limit the authority of the court to order one joint managing conservator to pay child support to the other.

A parent appointed the sole managing conservator of a child has the following exclusive rights and duty, subject to any limitation imposed by court order:

1.      The right to designate the primary residence of the child.

2.      The right to consent to medical, dental, and surgical treatment involving invasive procedures.

3.      The right to consent to psychiatric and psychological treatment.

4.      The right to receive and give receipt for periodic payments for the support of the child and to hold or disburse these funds for the benefit of the child.

5. The right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child.

6. The right to consent to marriage and to enlistment in the armed forces of the United States.

7. The right to make decisions concerning the child's education.

8. The right to the services and earnings of the child.

9. Except when a guardian of the child's estate or a guardian or attorney ad litem has been appointed for the child, the right to act as an agent of the child in relation to the child's estate if the child's action is required by the state, the United States, or a foreign government.

10. The duty to manage the estate of the child to the extent the estate has been created by community property or the joint property of the parents.

You shall appoint both parents joint managing conservators unless you find that such an appointment is not in the best interest of the child. In making this determination, you shall consider the following factors:

1. Whether the physical, psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators.

2. The ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest.

3. Whether each parent can encourage and accept a positive relationship between the child and the other parent.

4. Whether both parents participated in child-rearing before the filing of the suit.

5. The geographic proximity of the parents' residences.

6. If the child is twelve years of age or older, the child's preference, if any, regarding the person to have the exclusive right to designate the primary residence of the child.

7. Whether there is a history of family violence involving the parents.

In determining whether to appoint a party sole or joint managing conservator, you shall consider evidence of the intentional use of abusive physical force by a party against his or her spouse, against a parent of the child, or against any person younger than eighteen years of age committed within a two-year period preceding the filing of the suit or during the pendency of the suit.

## QUESTION NO. 1:

Who should be appointed managing conservator of the children?

You may answer by naming one person sole managing conservator or by naming *two persons* joint managing conservators.

Answer by writing on each line the name of the person who should be appointed sole managing conservator or the names of the *two persons* who should be appointed joint managing conservators of that child.

Answer: _Marissa Gonzales    Nash Gonzales_
_Joint managing conservators_

Charge of the Court
Page 6

If in answer to Question No. 1, you have named *two persons* joint managing conservators of the children, then answer Question No. 2 and Question No. 3. Otherwise, do not answer Question No. 2 and Question No. 3.

## QUESTION NO. 2:

Which joint managing conservator should have the exclusive right to designate the primary residence of the children?

Answer by writing the name of the joint managing conservator.

Answer: _Marissa Gonzales_

## QUESTION NO. 3:

Should the managing conservator you named in Question No. 2 above be permitted to designate the primary residence of the children without regard to geographic location or with a geographic restriction?

Answer by writing "Without regard to geographic location" or "With a geographic restriction."

Answer: _With a geographic restriction_

If you have answered Question No. 3 "With a geographic restriction," answer Question No. 4. Otherwise, do not answer Question No. 4.

## QUESTION NO. 4:

State the geographic area within which the joint managing conservator must designate the primary residence of the children.

Answer: _State of Texas_

**Presiding Juror:**

1.      When you go into the jury room to answer these questions, the first thing you will need to do is choose a presiding juror.

2.      The presiding juror has these duties:

a.  Have the complete charge read aloud if it will be helpful to your deliberations.

b.  Preside over your deliberations. This means the presiding juror will manage the discussions and see that you follow these instructions.

c.  Give written questions or comments to the bailiff who will give them to the judge.

d.  Write down the answers you agree on.

e.  Get the signatures for the verdict certificate.

f.  Notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

## Instruction for Signing the Verdict Certificate:

1.      You may answer the questions on a vote of 10 jurors.  The same 10 jurors must agree on every answer in the charge.  This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another.

2.      If 10 jurors agree on every answer, those 10 jurors sign the verdict.

If 11 jurors agree on every answer, those 11 jurors sign the verdict.

If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3.      All jurors should deliberate on every question.  You may end up with all 12 of you agreeing on some answers, while only 10 or 11 or you agree on other answers.  But when you sign the verdict, only those 10 who agree on every answer will sign the verdict.

_____

JUDGE PRESIDING                              2-22-13

# VERDICT CERTIFICATE

Check one:

_____ Our verdict is unanimous. All 12 of us have agreed to each and every answer. The presiding juror has signed the certificate for all 12 of us.

_____          *Kara Rambln*
Signature of Presiding Juror                Printed Name of Presiding Juror

_____ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

___✓___ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

| | SIGNATURE | PRINTED NAME |
|---|---|---|
| 1. | | Kara Rambin |
| 2. | | Melinda O'Cañas |
| 3. | | Michael Powell |
| 4. | | Cynthia Kimbrell |
| 5. | | Dawn Hernandez |
| 6. | | Michael Alvarez |
| 7. | | Garet Segovia |
| 8. | | MARY SWANSON |
| 9. | | Glenda Romo |
| 10. | | B. Gail Gonzales |
| 11. | | |
| 12. | | |

Charge of the Court
Page 12

R: 2, 23, 25, 24, 28, 29,
4JU

Filed in The District Court
of Travis County, Texas

DEC 1 1 2013

At_____9:00____A__M.

Amalia Rodriguez-Mendoza, Clerk

CAUSE NO: D-1-FM-11-005140

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| MARISSA ANN GONZALES | § | |
| AND | § | |
| NASH JESUS GONZALES | § | OF TRAVIS COUNTY, TEXAS |
| | § | |
| AND IN THE INTEREST OF | § | |
| B███ N██ G██████, | § | |
| AND G████ J███ H G██████, | § | |
| MINOR CHILDREN | § | 200th JUDICIAL DISTRICT |

## AMENDED/CORRECTED FINAL DECREE OF DIVORCE

On February 11, 2013, this case came on for a jury trial before the Honorable Lora Livingston. Trial concluded on April 10, 2013.

### Appearances

Petitioner, MARISSA ANN GONZALES, appeared in person and through her attorneys of record, Michael Burnett and Jeffrey D. Miller, and announced ready for trial.

Respondent, NASH JESUS GONZALES, appeared in person and through his attorney of record, Cecilia Wood, and announced not ready for trial.

### Record

The making of a record of testimony was made by the official court reporter of this court.

### Jurisdiction and Domicile

The Court finds that the pleadings of Petitioner, MARISSA ANN GONZALES, are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed. The Court finds Petitioner, MARISSA ANN GONZALES has been a domiciliary of Texas for at least a six-month period preceding the filing of this action and a resident of the county in which this suit is filed for at least a ninety-day period preceding the filing of this action. All persons entitled to citation were properly cited.

### Jury

A jury trial was conducted on the questions of conservatorship and geographic restriction.

GONZALES FINAL DECREE OF DIVORCE - Page 1 of 35
{W0575005.9}

TBC

### Divorce

IT IS ORDERED that MARISSA ANN GONZALES and NASH JESUS GONZALES are divorced and that the marriage between them is dissolved as of February 25, 2013.

### Children of the Marriage

The Court finds that MARISSA ANN GONZALES and NASH JESUS GONZALES are the parents of the following children:

Name:              B███ N███ G███████
Sex:               Male
Birthplace:        Austin, Travis County, Texas
Birth date:        ████████████
Present address:   ████████████████████████

Name:              G███ J██████ G███
Sex:               Male
Birthplace:        Round Rock, Williamson County, Texas
Birth date:        ████████████
Present address:   ████████████████████████

The Court finds no other children of the marriage are expected.

### Parenting Plan

The Court finds that the provisions in this decree relating to the rights and duties of the parties with relation to the children, possession of and access to the children, child support, and optimizing the development of a close and continuing relationship between each party and the children constitute the Court's order and the jury's verdict.

### Conservatorship

The Court, having considered the circumstances of the parents and of the children, finds that the following orders are in the best interest of the children.

IT IS ORDERED that MARISSA ANN GONZALES and NASH JESUS GONZALES are appointed Joint Managing Conservators of the following-named children: B███ N███ G███████ and GR██ J██████ G███████.

### <u>Rights at All Times</u>

IT IS ORDERED that, at all times, MARISSA ANN GONZALES and NASH JESUS GONZALES, shall each have the following rights:

1.      the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

GONZALES FINAL DECREE OF DIVORCE - Page 2 of 35
{W0575005.9}

TBC

2. the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

3. the right of access to medical, dental, psychological, and educational records of the children;

4. the right to consult with a physician, dentist, or psychologist of the children;

5. the right to consult with school officials concerning the children's welfare and educational status, including school activities;

6. the right to attend school activities;

7. the right to be designated on the children's records as a person to be notified in case of an emergency;

8. the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

9. the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

## Duties at All Times

IT IS ORDERED that, at all times, MARISSA ANN GONZALES and NASH JESUS GONZALES, shall each have the following duties:

1. the duty to inform the other conservator of the children in a timely manner of significant information concerning the health, education, and welfare of the children; and

2. the duty to inform the other conservator of the children if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under chapter 62 of the Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. IT IS ORDERED that this information shall be tendered in the form of a notice made as soon as practicable, but not later than the fortieth day after the date the conservator of the children begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. IT IS ORDERED that the notice must include a description of the offense that is the basis of the person's requirement to register as a sex offender or of the offense with which the person is charged. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE.

## Rights and Duties during Periods of Possession

IT IS ORDERED that, during their respective periods of possession, MARISSA ANN

TBC

GONZALES and NASH JESUS GONZALES, shall have the following rights and duties:

1.     the duty of care, control, protection, and reasonable discipline of the children;

2.     the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3.     the right to consent for the children to medical and dental care not involving an invasive procedure; and

4.     the right to direct the moral and religious training of the children.

### Rights of MARISSA ANN GONZALES

IT IS ORDERED that MARISSA ANN GONZALES, as a parent joint managing conservator, shall have the following rights:

1.     the exclusive right to designate the primary residence of the child in the State of Texas;

2.     the exclusive right to consent to medical, dental, and surgical treatment involving invasive procedures;

3.     the exclusive right to consent to psychiatric and psychological treatment of the children;

4.     the exclusive right to represent the children in legal action and to make other decisions of substantial legal significance concerning the children;

5.     the right, subject to the agreement of the other conservator, to consent to marriage and to enlistment in the armed forces of the United States;

6.     the exclusive right to make decisions concerning the children's education;

7.     except as provided by section 264.0111 of the Texas Family Code, the right to the services and earnings of the children;

8.     except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, the right, to act as an agent of the children in relation to the children's estates if the children's action is required by a state, the United States, or a foreign government;

9.     the duty to manage the estates of the children to the extent the estates have been created by community property or the joint property of the parent; and

10.     the exclusive right to receive and give receipt for periodic payments for the support of the children and to hold or disburse these funds for the benefit of the children.

TBC

## Rights of NASH JESUS GONZALES

IT IS ORDERED that NASH JESUS GONZALES, as a parent joint managing conservator, shall have the following rights:

1.     the right, subject to the agreement of the other conservator, to consent to marriage and to enlistment in the armed forces of the United States; and

2.     the duty to manage the estates of the children to the extent the estates have been created by NASH JESUS GONZALES or his family.

### *Possession and Access*

### *Possession Order*

The Court finds that the following provisions of this Possession Order are intended to and do comply with the requirements of the Texas Family Code and is in the best interest of the children the subject of this suit. IT IS ORDERED that each conservator shall comply with all terms and conditions of this Possession Order. IT IS ORDERED that this Possession Order is effective immediately and applies to all periods of possession occurring on and after the date the Court signs this Modified Possession Order. IT IS, THEREFORE, ORDERED:

### Definitions

1.     In this Possession Order "child" includes each child, whether one or more, who is a subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

2.     In this Possession Order "school" means the primary or secondary school in which the child is enrolled or, if the child is not enrolled in a primary or secondary school, the public school district in which the child primarily resides.

### Mutual Agreement or Specified Terms for Possession

IT IS ORDERED that the conservators shall have possession of the children at times mutually agreed to in advance by the parties, and, in the absence of mutual agreement, it is ORDERED that the conservators shall have possession of the child under the specified terms set out in this Possession Order.

### Possession by NASH JESUS GONZALES

### (a)     Parents Who Reside 100 Miles or Less Apart

Except as otherwise explicitly provided in this Possession Order, when NASH JESUS GONZALES resides 100 miles or less from the primary residence of the child, NASH JESUS GONZALES shall have the right to possession of the child as follows:

TBC

1.     <u>Weekends</u> - On the first, third, and fifth Friday of each month during the regular school term beginning at the time school is dismissed and ending at the time school resumes after the possession weekend. When school is not in session, the weekend possession period shall begin at 6:00 p.m. on Friday and end at 6:00 p.m. on the following Sunday.

2.     <u>Weekend Possession Extended by a Holiday</u> - Except as otherwise explicitly provided in this Possession Order, if a weekend period of possession by NASH JESUS GONZALES begins on a Friday that is a school holiday during the regular school term or a federal, state, or local holiday during the summer months when school is not in session, or if the period ends on or is immediately followed by a Monday that is such a holiday, that weekend period of possession shall begin at the time the children's school is regularly dismissed on the Thursday immediately preceding the Friday holiday or school holiday or end at the times the school resumes after that school holiday, as applicable.

3.     <u>Thursdays</u> - On Thursday of each week during the school year, beginning at the time school is dismissed and ending at the time school resumes on the following morning.

4.     <u>Spring Break in Even-Numbered Years</u> - In even-numbered years, beginning at the time the children's school is regularly dismissed on the day the children are dismissed from school for the spring vacation and ending at the time school resumes after that vacation.

Notwithstanding the weekend, Thursday periods of possession ORDERED for NASH JESUS GONZALES, it is explicitly ORDERED that MARISSA ANN GONZALES shall have a superior right of possession of the child as follows:

1.     <u>Spring Break in Odd-Numbered Years</u> - In odd-numbered years, beginning at the time the child's school is regularly dismissed on the day the child is dismissed from school for the school's spring vacation and ending at the time the child's school regularly resumes after that vacation.

2.     <u>Extended Summer Possession by MARISSA ANN GONZALES</u> – If MARISSA ANN GONZALES gives NASH JESUS GONZALES written notice by April 15 of a year or gives NASH JESUS GONZALES fourteen days' written notice on or after April 16 of a year, MARISSA ANN GONZALES may designate one weekend beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation, during which an otherwise scheduled weekend period of possession by NASH JESUS GONZALES shall not take place in that year, provided that the weekend so designated does not interfere with NASH JESUS GONZALES' period or periods of extended summer possession or with Father's Day Weekend.

**(b)     Extended Summer Possession**

TBC

Extended Summer Possession by NASH JESUS GONZALES if he resides less than 100 miles from the children.

With Written Notice by April 1. If NASH JESUS GONZALES gives MARISSA ANN GONZALES written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, NASH JESUS GONZALES shall have possession of the child for two periods of 15 days each, with each period separated by at least seven days, beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised as specified in the written notice. These periods of possession shall begin and end at 6:00 P.M.

Without Written Notice by April 1. If NASH JESUS GONZALES does not give MARISSA ANN GONZALES written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, NASH JESUS GONZALES shall have possession of the children for fifteen consecutive days in that year beginning at 6:00 p.m. on July 1 and ending at 6:00 p.m. on July 15 and for fifteen consecutive days in that year beginning at 6:00 p.m on August 1 and ending at 6:00 p.m. on August 15.

NASH JESUS GONZALES' two 15 consecutive day periods must be separated by at least seven (7) days. The exchanges at the beginning and the end of the designated periods of summer possession shall occur at 6:00 p.m.

**(c) Parents Who Reside More Than 100 Miles Apart**

Except as otherwise explicitly provided in this Possession Order, when NASH JESUS GONZALES resides more than 100 miles from the residence of the child, NASH JESUS GONZALES shall have the right to possession of the child as follows:

1. Weekends - Unless NASH JESUS GONZALES elects the alternative period of weekend possession described in the next paragraph, NASH JESUS GONZALES shall have the right to possession of the child on weekends, beginning at 6:00 p.m., on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday. Except as otherwise explicitly provided in this Possession Order, if such a weekend period of possession by NASH JESUS GONZALES begins on a Friday that is a school holiday during the regular school term or a federal, state, or local holiday during the summer months when school is not in session, or if the period ends on or is immediately followed by a Monday that is such a holiday, that weekend period of possession shall begin at 6:00 p.m. on the Thursday immediately preceding the Friday holiday or school holiday or end at 6:00 p.m. on that Monday holiday or school holiday, as applicable.

Alternate Weekend Possession - In lieu of the weekend possession described in the foregoing paragraph, NASH JESUS GONZALES shall have the right to possession of the child not more than one weekend per month of NASH JESUS GONZALES' choice beginning at 6:00 p.m. on the day school recesses for the weekend and ending at 6:00 p.m. on the day before school resumes after the weekend. Except as otherwise explicitly

GONZALES FINAL DECREE OF DIVORCE - Page 7 of 35
{W0575005.9}

provided in this Possession Order, if such a weekend period of possession by NASH JESUS GONZALES begins on a Friday that is a school holiday during the regular school term or a federal, state, or local holiday during the summer months when school is not in session, or if the period ends on or is immediately followed by a Monday that is such a holiday, that weekend period of possession shall begin at 6:00 p.m. on the Thursday immediately preceding the Friday holiday or school holiday or end at 6:00 p.m. on that Monday holiday or school holiday, as applicable. NASH JESUS GONZALES may elect an option for this alternative period of weekend possession by giving written notice to MARISSA ANN GONZALES within ninety days after the parties begin to reside more than 100 miles apart. If NASH JESUS GONZALES makes this election, NASH JESUS GONZALES shall give MARISSA ANN GONZALES fourteen days' written notice preceding a designated weekend. The weekends chosen shall not conflict with the provisions regarding Christmas, Thanksgiving, Easter, the child's birthday, and Mother's Day Weekend below.

2.    <u>Spring Break in All Years</u> - Every year, beginning at 6:00 p.m. on the day the child is dismissed from school for the school's spring vacation and ending at 6:00 p.m. on the day before school resumes after that vacation.

3.    <u>Extended Summer Possession by NASH JESUS GONZALES</u> -

With Written Notice by April 1 - If NASH JESUS GONZALES gives MARISSA ANN GONZALES written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, NASH JESUS GONZALES shall have possession of the child for two periods of twenty-one days (21) days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year. These periods of possession shall be separated by at least a seven day periods and begin and end at 6:00 p.m.

Without Written Notice by April 1 - If NASH JESUS GONZALES does not give MARISSA ANN GONZALES written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, NASH JESUS GONZALES shall have possession of the child for twenty-one consecutive days beginning at 6:00 p.m. on July 1 and ending at 6:00 p.m. on July 22 of that year and for twenty-one consecutive days beginning on July 29 at 6:00 p.m. and ending at 6:00 pm. on August 19 of that year.

**(d)    Holidays Unaffected by Distance**

Notwithstanding the weekend and Thursday periods of possession of NASH JESUS GONZALES, MARISSA ANN GONZALES and NASH JESUS GONZALES shall have the right to possession of the child as follows:

1.    <u>Christmas Holidays in Even-Numbered Years</u> - In even-numbered years, NASH JESUS GONZALES shall have the right to possession of the child beginning at 6 p.m. on the day the child is dismissed from school for the Christmas school vacation and ending

GONZALES FINAL DECREE OF DIVORCE - Page 8 of 35
{W0575005.9}

TBC

at noon on December 28, and MARISSA ANN GONZALES shall have the right to possession of the child beginning at noon on December 28 and ending at the time the child's school regularly resumes after that Christmas school vacation.

2.     <u>Christmas Holidays in Odd-Numbered Years</u> - In odd-numbered years, MARISSA ANN GONZALES shall have the right to possession of the child beginning at the time the child's school is regularly dismissed on the day the child is dismissed from school for the Christmas school vacation and ending at noon on December 28, and NASH JESUS GONZALES shall have the right to possession of the child beginning at noon on December 28 and ending at 6:00 p.m. on the day before the child's school regularly resumes after that Christmas school vacation.

3.     <u>Thanksgiving in Odd-Numbered Years</u> - In odd-numbered years, NASH JESUS GONZALES shall have the right to possession of the child beginning at 6 p.m. on the day the child is dismissed from school for the Thanksgiving holiday and ending at 6:00 p.m. on the day before the child's school regularly resumes following Thanksgiving.

4.     <u>Thanksgiving in Even-Numbered Years</u> - In even-numbered years, MARISSA ANN GONZALES shall have the right to possession of the child beginning at the time the child's school is regularly dismissed on the day the child is dismissed from school for the Thanksgiving holiday and ending at the time the child's school regularly resumes following Thanksgiving.

5.     <u>Child's Birthday</u> - If a parent is not otherwise entitled under this Possession Order to present possession of the child on the child's birthday, that parent shall have possession of the child, along with the child's sibling, beginning at 6:00 p.m. and ending at 8:00 p.m. on that day, provided that that parent picks up the child from the other parent's residence and returns the child to that same place.

6.     <u>Father's Day Weekend</u> - NASH JESUS GONZALES shall have the right to possession of the child each year, beginning at 6:00 p.m. on the Friday preceding Father's Day and ending at the time the child's school regularly resumes following Father's Day or at 8:00 a.m. on the Monday after Father's Day if school is not in session, provided that if NASH JESUS GONZALES is not otherwise entitled to possession of the children under this Possession Order, NASH JESUS GONZALES shall pick up the child from MARISSA ANN GONZALES' residence and return the child to that same place.

7.     <u>Mother's Day Weekend</u> - MARISSA ANN GONZALES shall have the right to possession of the child each year, beginning at the time school recesses on the Friday preceding Mother's Day and ending at the time the child's school regularly resumes following Mother's Day.

8.     <u>Easter</u> – MARISSA ANN GONZALES shall have possession of the children for the Easter holiday weekend in even-numbered years beginning at the time the child's school is regularly dismissed on the Friday preceding the holiday and ending at the time the child's school regularly resumes after that vacation. NASH JESUS GONZALES

GONZALES shall have possession of the children for the Easter holiday weekend in odd-numbered years beginning at the time the child's school is regularly dismissed on the Friday preceding the holiday and ending at the time the child's school regularly resumes after that vacation.

**(e)      Undesignated Periods of Possession**

MARISSA ANN GONZALES shall have the right of possession of the child at all other times not specifically designated in this Modified Possession Order for NASH JESUS GONZALES.

**(f)      General Terms and Conditions**

Except as otherwise explicitly provided in this Modified Possession Order, the terms and conditions of possession of the child that apply regardless of the distance between the residence of a parent and the child are as follows:

1.      Surrender of Child by MARISSA ANN GONZALES - MARISSA ANN GONZALES is ORDERED to surrender the child to NASH JESUS GONZALES at the beginning of each period of NASH JESUS GONZALES' possession at the residence of NASH JESUS GONZALES.

2.      Return of Child by NASH JESUS GONZALES – NASH JESUS GONZALES is ORDERED to return the child to the residence of MARISSA ANN GONZALES at the end of each period of possession unless otherwise designated herein.

3.      Surrender of Child by NASH JESUS GONZALES – NASH JESUS GONZALES is ORDERED to surrender the child to MARISSA ANN GONZALES, if the child is in NASH JESUS GONZALES' possession or subject to NASH JESUS GONZALES' control, at the beginning of each period of MARISSA ANN GONZALES' exclusive periods of possession, at the place designated in this Modified Possession Order.

4.      Return of Child by MARISSA ANN GONZALES - MARISSA ANN GONZALES is ORDERED to return the child to NASH JESUS GONZALES, if NASH JESUS GONZALES is entitled to possession of the child, at the end of each of MARISSA ANN GONZALES ' exclusive periods of possession, at the place designated in this Modified Possession Order.

5.      Personal Effects - Each conservator is ORDERED to return with the child the personal effects that the child brought at the beginning of the period of possession.

6.      Designation of Competent Adult - Each conservator may designate any competent adult to pick up and return the child, as applicable. IT IS ORDERED that a conservator or a designated competent adult be present when the child is picked up or returned.

7.      Inability to Exercise Possession - Each conservator is ORDERED to give notice to the person in possession of the child on each occasion that the conservator will be unable to exercise that conservator's right of possession for any specified period.

8.      Written Notice - Written notice shall be deemed to have been timely made if received or postmarked before or at the time that notice is due or if sent by email.

### Duration

The periods of possession ordered above apply to each child the subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

### Noninterference with Possession

IT IS ORDERED that neither conservator shall take possession of the children during the other conservator's period of possession unless there is a prior written agreement signed by both conservators or in case of an emergency.

### Termination of Orders

The provisions of this decree relating to conservatorship, possession, or access terminate on the remarriage of MARISSA ANN GONZALES to NASH JESUS GONZALES unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code.

### Geographical Area for Primary Residence of Children

The Court finds that, in accordance with section 153.001 of the *Texas Family Code*, it is the public policy of Texas to assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child, to provide a safe, stable, and nonviolent environment for the child, and to encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

IT IS ORDERED that the primary residence of the children shall be within the State of Texas, and the parties shall not remove the children from the State of Texas for the purpose of changing the primary residence of the children until modified by further order of the court of continuing jurisdiction or by written agreement signed by the parties and filed with the court.

IT IS FURTHER ORDERED that MARISSA ANN GONZALES shall have the exclusive right to designate the children's primary residence within the State of Texas.

IT IS ORDERED that this geographical restriction on the residence of the children shall be lifted if, at the time MARISSA ANN GONZALES wishes to remove the children from the State of Texas for the purpose of changing the primary residence of the children, NASH JESUS GONZALES does not reside within the State of Texas.

### *Child's Passport and Travel Outside of the Country*

IT IS ORDERED if a party applies for a passport for a child, that party is ORDERED to notify the other conservator of that fact no later than seven (7) days after the application. IT IS ORDERED that if a parent's consent is required for the issuance of a passport, that parent shall provide that consent in writing no later than seven (7) days after receipt of the consent documents, unless the parent has good cause for withholding that consent.

IT IS ORDERED that MARISSA ANN GONZALES shall have the right to maintain possession of any passports of the children, B███ N███ G████████ and G███T J███ G████████



IT IS ORDERED that if a conservator intends to have the child travel outside the United States during the conservator's period of possession of the child, the conservator shall provide written notice to the other conservator. IT IS ORDERED that this written notice shall include all the following:

1.      any written consent form for travel outside the United States that is required by the country of destination, countries through which travel will occur, or the intended carriers;

2.      the date, time, and location of the child's departure from the United States;

3.      a reasonable description of means of transportation, including, if applicable, all names of carriers, flight numbers, and scheduled departure and arrival times;

4.      a reasonable description of each destination of the intended travel, including the name, address, and phone number of each interim destination and the final travel location;

5.      the dates the child are scheduled to arrive and depart at each such destination;

6.      the date, time, and location of the child's return to the United States;

7.      a complete statement of each portion of the intended travel during which the conservator providing the written notice will not accompany the child; and

8.      the name, permanent and mailing addresses, and work and home telephone numbers of each person accompanying the child on the intended travel other than the conservator providing the written notice.

The written notice or email may be in the form proscribed in the *Texas Family Law Practice Manual* as the "Notice of Intent for Child to Travel Outside the United States."

If the intended travel is a group trip, such as with a school or other organization, the conservator providing the written notice is ORDERED to provide with the written notice all information about the group trip and its sponsor instead of stating the name, permanent and

GONZALES FINAL DECREE OF DIVORCE - Page 12 of 35
{W0575005.9}

mailing addresses, and work and home telephone numbers of each person accompanying the child.

IT IS FURTHER ORDERED that this written notice shall be furnished to the other conservator no less than twenty-one (21) days before the intended day of departure of the child from the United States.

IT IS ORDERED that any conservator who violates the terms and conditions of these provisions regarding the child's passports shall be liable for all costs incurred due to that person's noncompliance with these provisions. These costs shall include, but not be limited to, the expense of nonrefundable or noncreditable tickets, the costs of nonrefundable deposits for travel or lodging, attorney's fees, and all other costs incurred seeking enforcement of any of these provisions.

Subject to the terms of the Possession Order recited herein, each party is ORDERED to provide the other party at least thirty (30) days written notice or email that a party desires to travel with the child beyond the territorial limits of the United States. Each party is ORDERED to provide the other party appropriate written authorization, within ten (10) days after written request is received, as is necessary to allow the child to travel with the other party beyond the territorial limits of the United States. The parties are ORDERED to exchange passports as is necessary to allow such travel.

### Child Support

IT IS ORDERED that NASH JESUS GONZALES is obligated to pay and shall pay to MARISSA ANN GONZALES child support of one thousand eight hundred seventy-five dollars ($1,875.00) per month, with the first payment being due and payable on March 1, 2013 and a like payment being due and payable on the first day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

1. any child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;
2. any child marries;
3. any child dies;
4. any child enlists in the armed forces of the United States and begins active service as defined by section 101 of title 10 of the United States Code; or
5. any child's disabilities are otherwise removed for general purposes.

Thereafter, NASH JESUS GONZALES is ORDERED to pay to MARISSA ANN GONZALES child support of one thousand five hundred dollars ($1,500.00) per month, due and payable on the first day of the first month immediately following the date of the earliest occurrence of one of the events specified above for the other child and a like sum of one thousand five hundred dollars ($1,500.00) due and payable on the first day of each month thereafter until the next occurrence of one of the events specified above for the other child.

GONZALES FINAL DECREE OF DIVORCE - Page 13 of 35
{W0575005.9}

TBC

It is confirmed that as of September 1, 2013, there is no arrearage in child support owed by NASH JESUS GONZALES as he has had made all child support payments as required herein.

If the child is eighteen years of age and has not graduated from high school, IT IS ORDERED that NASH JESUS GONZALES's obligation to pay child support to MARISSA ANN GONZALES shall not terminate but shall continue for as long as the child is enrolled-

1.  under chapter 25 of the Texas Education Code in an accredited secondary school in a program leading toward a high school diploma or under section 130.008 of the Education Code in courses for joint high school and junior college credit and is complying with the minimum attendance requirements of subchapter C of chapter 25 of the Education Code; or

2.  on a full-time basis in a private secondary school in a program leading toward a high school diploma and is complying with the minimum attendance requirements imposed by that school.

## Withholding from Earnings

IT IS ORDERED that any employer of NASH JESUS GONZALES shall be ordered to withhold from earnings for child support from the disposable earnings of NASH JESUS GONZALES for the support of B███ N███ GO███████ and G███ JO██ G█████████

IT IS FURTHER ORDERED that all amounts withheld from the disposable earnings of NASH JESUS GONZALES by the employer and paid in accordance with the order to that employer shall constitute a credit against the child support obligation. Payment of the full amount of child support ordered paid by this decree through the means of withholding from earnings shall discharge the child support obligation. If the amount withheld from earnings and credited against the child support obligation is less than 100 percent of the amount ordered to be paid by this decree, the balance due remains an obligation of NASH JESUS GONZALES, and it is hereby ORDERED that NASH JESUS GONZALES pay the balance due directly to the state disbursement unit specified below.

On this date the Court authorized the issuance of an Order/Notice to Withhold Income for Child Support.

## Payment

IT IS ORDERED that all monthly child support payments shall be made through the state disbursement unit at Texas Child Support Disbursement Unit, P.O. Box 659791, San Antonio, Texas 78265-9791, and thereafter promptly remitted to MARISSA ANN GONZALES for the support of the children. IT IS ORDERED that each party shall pay, when due, all fees charged to that party by the state disbursement unit and any other agency statutorily authorized to charge a fee.

GONZALES FINAL DECREE OF DIVORCE - Page 14 of 35
{W0575005.9}

## Change of Employment

IT IS FURTHER ORDERED that NASH JESUS GONZALES shall notify this Court and MARISSA ANN GONZALES by U.S. certified mail, return receipt requested, of any change of address and of any termination of employment. This notice shall be given no later than seven days after the change of address or the termination of employment. This notice or a subsequent notice shall also provide the current address of NASH JESUS GONZALES and the name and address of his current employer, whenever that information becomes available.

## Clerk's Duties

IT IS ORDERED that, on the request of a prosecuting attorney, the title IV-D agency, the friend of the Court, a domestic relations office, MARISSA ANN GONZALES, NASH JESUS GONZALES, or an attorney representing MARISSA ANN GONZALES or NASH JESUS GONZALES, the clerk of this Court shall cause a certified copy of the Order/Notice to Withhold Income for Child Support to be delivered to any employer.

## Suspension of Withholding from Earnings

The Court finds that good cause exists that no order to withhold from earnings for child support should be delivered to any employer of NASH JESUS GONZALES as long as no delinquency or other violation of this child support order occurs and as long as the Office of the Attorney General Child Support Division is not providing services to MARISSA ANN GONZALES. For the purpose of this provision, a delinquency has occurred if NASH JESUS GONZALES has been in arrears for an amount due for more than thirty days or the amount of the arrearages equals or is greater than the amount due for a one-month period. If a delinquency or other violation occurs or if the Office of the Attorney General Child Support Division begins providing services to MARISSA ANN GONZALES, the clerk shall deliver the order to withhold earnings as provided above.

ACCORDINGLY, IT IS ORDERED that, as long as no delinquency or other violation of this child support order occurs and as long as the Office of the Attorney General Child Support Division is not providing services to MARISSA ANN GONZALES, all payments shall be made through the state disbursement unit and thereafter promptly remitted to MARISSA ANN GONZALES for the support of the children. If a delinquency or other violation occurs or if the Office of the Attorney General Child Support Division begins providing services to MARISSA ANN GONZALES, all payments shall be made in accordance with the order to withhold earnings as provided above.

## *Health Care*

1. IT IS ORDERED that MARISSA ANN GONZALES and NASH JESUS GONZALES shall each provide medical support for each child as set out in this order as additional child support for as long as the Court may order MARISSA ANN GONZALES and NASH JESUS GONZALES to provide support for the last child under sections 154.001 and

GONZALES FINAL DECREE OF DIVORCE - Page 15 of 35
{W0575005.9}

TBC

154.002 of the Texas Family Code. Beginning on the day MARISSA ANN GONZALES and NASH JESUS GONZALES' actual or potential obligation to support the last child under sections 154.001 and 154.002 of the Family Code terminates, IT IS ORDERED that MARISSA ANN GONZALES and NASH JESUS GONZALES are discharged from the obligations set forth in this medical support order with respect to that child, except for any failure by a parent to fully comply with those obligations before that date.

2.    Definitions –

"Health Insurance" means insurance coverage that provides basic health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services, that may be provided through a health maintenance organization or other private or public organization, other than medical assistance under chapter 32 of the Texas Human Resources Code.

"Reasonable cost" means the total cost of health insurance coverage for all children for which father or mother is responsible under a medical support order that does not exceed 9 percent of father's or mother's annual resources, as described by section 154.062(b) of the Texas Family Code.

"Reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of a child" include, without limitation, any copayments for office visits or prescription drugs, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges. These reasonable and necessary health-care expenses do not include expenses for travel to and from the health-care provider or for nonprescription medication.

"Furnish" means:

    a.    to hand deliver the document by a person eighteen years of age or older either to the recipient or to a person who is eighteen years of age or older and permanently resides with the recipient;
    b.    to deliver the document to the recipient by email or certified mail, return receipt requested, to the recipient's last known mailing or residence address; or
    c.    to deliver the document to the recipient at the recipient's last known mailing or residence address using any person or entity whose principal business is that of a courier or deliverer of papers or documents either within or outside the United States.

3.    Findings on Health Insurance Availability– Having considered the cost, accessibility, and quality of health insurance coverage available to the parties, the Court finds:

IT IS FURTHER FOUND that the following orders regarding health-care coverage are in the best interest of the children.

GONZALES FINAL DECREE OF DIVORCE - Page 16 of 35
{W0575005.9}

4. Provision of Health-Care Coverage –

NASH JESUS GONZALES is ORDERED to maintain health insurance in full force and effect on each child who is the subject of this suit as long as child support is payable for that child that covers basic health-care services, including usual physician services, office visits, hospitalization, laboratory, X-ray, and emergency services.

IT IS ORDERED that the cash medical support provisions of this order shall be an obligation of the estate of NASH JESUS GONZALES and shall not terminate on his death.

NASH JESUS GONZALES is ORDERED to furnish a true and correct copy of the health insurance policy or certification and a schedule of benefits within 15 days of the signing of this order. NASH JESUS GONZALES is ORDERED to furnish MARISSA ANN GONZALES the insurance cards and any other forms necessary for use of the insurance within 15 days of the signing of this order. NASH JESUS GONZALES is ORDERED to provide, within three days of receipt by him, to MARISSA ANN GONZALES any insurance checks, other payments, or explanations of benefits relating to any medical expenses for the children that MARISSA ANN GONZALES paid or incurred.

Pursuant to section 154.183(c) of the Texas Family Code, the reasonable and necessary health-care expenses of the children that are not reimbursed by health insurance are allocated as follows: NASH JESUS GONZALES is ORDERED to pay 50 percent (50%) and MARISSA ANN GONZALES is ORDERED to pay 50 percent (50%) of the unreimbursed health-care expenses. Notwithstanding the foregoing, IT IS ORDERED that MARISSA ANN GONZALES shall pay one hundred percent (100%) of any non-traditional health-care expenses which are not recommended by the children's pediatrician.

The party who incurs a health-care expense on behalf of a child is ORDERED to submit to the other party all forms, receipts, bills, statements, and explanations of benefits reflecting the uninsured portion of the health-care expenses within thirty days after he or she receives them. The non-incurring party is ORDERED to pay his or her percentage of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the incurring party for any advance payment exceeding the incurring party's percentage of the uninsured portion of the health-care expenses within thirty days after the non-incurring party receives the forms, receipts, bills, statements, and explanations of benefits.

These provisions apply to all unreimbursed health-care expenses of any child who is the subject of this suit that are incurred while child support is payable for that child.

5. Secondary Coverage – IT IS ORDERED that if a party provides secondary health insurance coverage for the children, both parties shall cooperate fully with regard to the handling and filing of claims with the insurance carrier providing the coverage in order to maximize the benefits available to the children and to ensure that the party who pays for health-care expenses for the children is reimbursed for the payment from both carriers to the fullest extent possible.

6. Compliance with Insurance Company Requirements – Each party is ORDERED to

GONZALES FINAL DECREE OF DIVORCE - Page 17 of 35
{W0575005.9}

TBC

conform to all requirements imposed by the terms and conditions of the policy of health insurance covering the children in order to assure maximum reimbursement or direct payment by the insurance company of the incurred health-care expense, including but not limited to requirements for advance notice to any carrier, second opinions, and the like. Each party is ORDERED to attempt to use "preferred providers," or services within the health maintenance organization, if applicable; however, this provision shall not apply if emergency care is required. Disallowance of the bill by a health insurer shall not excuse the obligation of either party to make payment; however, if a bill is disallowed or the benefit reduced because of the failure of a party to follow insurance procedures or requirements, IT IS ORDERED that the party failing to follow the insurance procedures or requirements shall be wholly responsible for the increased portion of that bill.

7. Claims - Except as provided in this paragraph, the party who is not carrying the health insurance policy covering the children is ORDERED to furnish to the party carrying the policy, within fifteen days of receiving them, any and all forms, receipts, bills, and statements reflecting the health-care expenses the party not carrying the policy incurs on behalf of the children. In accordance with section 1204.251 and 1504.055(a) of the Texas Insurance Code, IT IS ORDERED that the party who is not carrying the health insurance policy covering the children, at that party's option, may file any claims for health-care expenses directly with the insurance carrier with and from whom coverage is provided for the benefit of the children and receive payments directly from the insurance company. Further, for the sole purpose of section 1204.251 of the Texas Insurance Code, MARISSA ANN GONZALES is designated the sole managing conservator or possessory conservator of the children.

The party who is carrying the health insurance policy covering the children is ORDERED to submit all forms required by the insurance company for payment or reimbursement of health-care expenses incurred by either party on behalf of a child to the insurance carrier within fifteen days of that party's receiving any form, receipt, bill, or statement reflecting the expenses.

8. Constructive Trust for Payments Received - IT IS ORDERED that any insurance payments received by a party from the health insurance carrier as reimbursement for health-care expenses incurred by or on behalf of a child shall belong to the party who paid those expenses. IT IS FURTHER ORDERED that the party receiving the insurance payments is designated a constructive trustee to receive any insurance checks or payments for health-care expenses paid by the other party, and the party carrying the policy shall endorse and forward the checks or payments, along with any explanation of benefits received, to the other party within three days of receiving them.

9. WARNING - A PARENT ORDERED TO PROVIDE HEALTH INSURANCE OR TO PAY THE OTHER PARENT ADDITIONAL CHILD SUPPORT FOR THE COST OF HEALTH INSURANCE WHO FAILS TO DO SO IS LIABLE FOR NECESSARY MEDICAL EXPENSES OF THE CHILDREN, WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID IF HEALTH INSURANCE HAD BEEN PROVIDED, AND FOR THE COST OF HEALTH INSURANCE PREMIUMS OR CONTRIBUTIONS, IF ANY, PAID ON BEHALF OF THE CHILDREN.

GONZALES FINAL DECREE OF DIVORCE - Page 18 of 35
{W0575005.9}

TBC

## *Miscellaneous Child Support Provisions*

### No Credit for Informal Payments

IT IS ORDERED that the child support as prescribed in this decree shall be exclusively discharged in the manner ordered and that any direct payments made by NASH JESUS GONZALES to MARISSA ANN GONZALES or any expenditures incurred by NASH JESUS GONZALES during NASH JESUS GONZALES' periods of possession of or access to the children, as prescribed in this decree, for food, clothing, gifts, travel, shelter, or entertainment are deemed in addition to and not in lieu of the support ordered in this decree.

### Support as Obligation of Estate

IT IS ORDERED that the provisions for child support in this decree shall be an obligation of the estate of NASH JESUS GONZALES and shall not terminate on the death of NASH JESUS GONZALES. Payments received for the benefit of the children, including payments from the Social Security Administration, Department of Veterans Affairs or other governmental agency or life insurance proceeds, annuity payments, trust distributions, or retirement survivor benefits, shall be a credit against this obligation. Any remaining balance of the child support is an obligation of NASH JESUS GONZALES' estate.

### Termination of Orders on Remarriage of Parties but Not on Death of Obligee

The provisions of this decree relating to current child support terminate on the remarriage of MARISSA ANN GONZALES to NASH JESUS GONZALES unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code. An obligation to pay child support under this decree does not terminate on the death of MARISSA ANN GONZALES but continues as an obligation to B███ N██ G███████ and G███ ███████████.

## *Medical Notification*

Each party is ORDERED to notify the other party via telephone, text, and/or email within two (2) hours of any medical condition, treatment, illness, accident, or emergency of the child.

## *Minimizing Disruption and Exposure to Parental Conflict*

IT IS ORDERED that the parties shall conduct themselves at all times in a manner that will minimize the exposure of the children to harmful parental conflict. Each party is ORDERED not to make negative remarks about the other party or the other party's family. Each party is further ORDERED to be respectful to the other party and the other party's family in the presence of the children. The parties are ORDERED to communicate with each other in a polite, civil, and cooperative manner and to attempt to resolve disputes concerning the children with dignity and by focusing on the best interest of the children.

TBC

*Children's Bill of Rights*

IT IS ORDERED that MARISSA ANN GONZALES and NASH JESUS GONZALES shall follow the "The Children's Bill of Rights" as set forth below:

1.  Neither parent shall deny the child reasonable use of the telephone to place and receive calls with the other parent or relatives. Such use shall be private to the child without unreasonable interference, such as rigid adherence to time parameters, or tying up the phone with internet connections or other calls during prescribed times, instructed disconnects for chores, dinner, etc.

2.  Neither parent shall speak or write derogatory remarks about the other parent to the child, or engage in abusive, coarse or foul language, which can be overheard by the child whether or not the language involves the other parent.

3.  Neither parent shall permit the children to overhear arguments, negotiations or other substantive discussions about legal or business dealings between the parents.

4.  Neither parent shall physically or psychologically attempt to pressure, attempt to influence, pressure, or influence the children concerning the personal opinion or position of the child concerning legal proceedings between the parents.

5.  Each parent will permit the child to display photographs of the other parent or both parents in the child's room.

6.  Neither parent shall communicate moral judgments about the other parent to the child concerning the other parent's choice of values, life-style, choice of friends, successes or failures in life (career, financial, relational) or residential choice.

7.  The parents will acknowledge to the child that the child has two homes although the child may spend more time at one home than the other.

8.  The parents shall cooperate to the greatest extent practicable in sharing time with the child.

9.  Neither party shall suggest to the child that it is the child's option whether or not to engage in visitation during the other party's time for possession and access.

10. Each parent will permit the child to retain, and allow easy access to, correspondence, greeting cards and other written materials received from the other parent.

11. Each parent will respect the physical integrity of items possessed by the child, which depict the other parent or remind the child of the other parent.

TBC

12. Each party will assist and encourage the child's attendance and participation in church, temple, or other organized religious activities if such is the desire of the child.

13. Neither parent will trivialize or deny the existence of, the other parent to the child.

14. Neither parent will interrogate the child about the other parent nor will either parent discourage comments by the child about the other parent.

15. Neither parent will intercept, "lose" "derail", "forget", or otherwise interfere with communications to the child from the other parent.

16. Neither parent will refuse to acknowledge that the child can have or should have good experiences with the other parent.

17. Neither parent will directly or indirectly attack or criticize to the child the extended family of the other parent, the other parent's career, the living and travel arrangements of the other parent, or lawful activities of the other parent or associates of the other parent.

18. Neither parent will use the child as a "middle-man" by using the child to communicate with the other parent on inappropriate topics.

19. Neither parent will undermine the other parent in the eyes of the child by engaging in the "circumstantial syndrome" which is done by manipulating, changing, or rearranging facts.

20. Neither parent will create for, or exaggerate to, the child differences between the parents.

21. Neither parent will say and do things with an eye to gaining the child as an "ally" against the other parent.

22. Neither parent will encourage or instruct the child to be disobedient to the other parent, stepparents, or relatives.

23. Neither parent will reward the child to act negatively toward the other parent.

24. Neither parent will try to make the child believe he or she loves the child more than the other parent by, for example, saying that he or she loves the child more than the other parent or over-informing the child on adult topics or overindulging the child.

25. Neither parent will discuss child support issues with the child.

GONZALES FINAL DECREE OF DIVORCE - Page 21 of 35
(W0575005.9)

TBC

26. Neither parent will engage in judgmental, opinionated or negative commentary, physical inspections or interrogations once the child arrives from his/her other home.

27. Neither parent will "rewrite" or "rescript" facts, which the child originally knows to be different.

28. Neither parent will punish the child physically or threaten such punishment in order to influence the child to adopt the parent's negative program, if any, against the other parent.

29. Neither parent will permit the child to be transported by a person who is intoxicated due to consumption of alcohol, illegal drugs or abuse of prescription drugs.

30. Neither parent will smoke tobacco materials inside structures or vehicles occupied at the time by the child.

31. Each parent will permit the child to carry gifts, toys, clothing, and other items belonging to the child with him or her to the residence of the other parent or relatives or permit the child to take gifts, toys, clothing, and other items belonging to the child back to the residence of the other parent, as the case may be, to facilitate the child having with him or her objects important to the child. The gifts, toys, clothing, and other items belonging to the child referred herein mean items, which are reasonably transportable (and do not include pets which the parents agree are impractical to move about).

### Permanent Injunction against NASH JESUS GONZALES and MARISSA ANN GONZALES

IT IS ORDERED that NASH JESUS GONZALES and MARISSA ANN GONZALES are each permanently enjoined from the following:

1. Going to the residence of the other party except during the exchanges of the children;

2. Entering the inside of the residence of the other party; and

3. Attending any individual private lesson or tutorial for the child except when the parent is entitled to possession of the child.

IT IS ORDERED that NASH JESUS GONZALES and MARISSA ANN GONZALES may each schedule individual lessons that occur during their periods of possession and both parties may attend group lessons of the minor children.

IT IS ORDERED that NASH JESUS GONZALES and MARISSA ANN GONZALES have waived issuance and service of the writ of injunction and that they have therefore been duly

GONZALES FINAL DECREE OF DIVORCE - Page 22 of 35
(W0575005.9)

TBC

served with the writ of injunction.

## *Information Regarding Parties*

The information required for each party by section 105.006(a) of the Texas Family Code is as follows:

| | | |
|---|---|---|
| Name | : | MARISSA ANN GONZALES |
| Social Security Number | : | xxx-█ |
| Driver's license Number | : | xxxx█ |
| Issuing State | : | Texas |
| Current Residence Address | : | █████████ |
| Mailing Address | : | Same |
| Home telephone number | : | ██████ |
| Name of Employer | : | The Law Office of Marissa Maggio |
| Address of Employment | : | Same |
| Work Telephone Number | : | (512) 394-2979 |

| | | |
|---|---|---|
| Name | : | NASH JESUS GONZALES |
| Social Security Number | : | ████ |
| Driver's license Number | : | |
| Current Residence Address | : | Texas |
| Mailing Address | : | █████████ |
| Home telephone number | : | ██████ |
| Name of Employer | : | Gonzales & Gonzales, PC |
| Address of Employment | : | 5900 S. Lake Forest Drive, Suite 200, McKinney, TX 75070 |
| Work Telephone Number | : | (972) 632-1300 |

## *Required Notices*

EACH PERSON WHO IS A PARTY TO THIS ORDER OR DECREE IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, DRIVER'S LICENSE NUMBER, AND WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY

GONZALES FINAL DECREE OF DIVORCE - Page 23 of 35
{W0575005.9}

TBC

PERSON, BY VIRTUE OF THIS ORDER OR DECREE, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR IS ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

NOTICE SHALL BE GIVEN TO THE OTHER PARTY BY DELIVERING A COPY OF THE NOTICE TO THE PARTY BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED. NOTICE SHALL BE GIVEN TO THE COURT BY DELIVERING A COPY OF THE NOTICE EITHER IN PERSON TO THE CLERK OF THE COURT OR BY REGISTERED OR CERTIFIED MAIL ADDRESSED TO THE CLERK, TRAVIS COUNTY DISTRICT CLERK, 1000 GUADALUPE STREET, AUSTIN, TEXAS 78701. NOTICE SHALL BE GIVEN TO THE STATE CASE REGISTRY BY MAILING A COPY OF THE NOTICE TO STATE CASE REGISTRY, CENTRAL FILE MAINTENANCE, P.O. BOX 12017, AUSTIN, TEXAS 78711-2017.

WARNINGS TO PARTIES

FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.

FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

*Division of Marital Estate*

The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party and the children of the marriage.

<u>Property to Husband</u>

IT IS ORDERED AND DECREED that the husband, NASH JESUS GONZALES, is awarded the following as his sole and separate property, and the wife is divested of all right, title, interest, and claim in and to that property:

H-1.    All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the husband or subject to his sole control.

H-2.    All clothing, jewelry, and other personal effects in the possession of the husband or subject to his sole control.

H-3.    All sums of cash in the possession of the husband or subject to his sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the husband's sole name or from which the husband has the sole right to withdraw funds or which are subject to the husband's sole control, including but not limited to:

      a.    BBVA Compass Bank Account XX███ ; and
      b.    Regions Bank Account XX███ .

H-4.    Individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance benefits in the husband's name, including but not limited to:

      a.    Morgan Stanley IRA XXX███ and
      b.    Morgan Stanley SEP XXX███

H-5.    All policies of life insurance (including cash values) insuring the husband's life.

H-6.    The 1999 Lexus RX300 motor vehicle, together with all prepaid insurance, keys, and title documents.

H-7.    Fifty percent (50%) of any fees earned on the Gonzales & Gonzales, GP cases which were settled or resolved prior to the date of dissolution of the marriage, which is February 25, 2013. This share shall be calculated after the party who advanced the out-of-pocket case expenses is reimbursed. However, in the event he expense was paid by Gonzales & Gonzales, GP, then such case expense amount shall be paid fifty percent (50%) to NASH JESUS GONZALES and fifty percent (50%) to MARISSA ANN GONZALES.

H-8.    Sixty percent (60%) of any fees earned on the Gonzales & Gonzales, GP unsettled cases retained by NASH JESUS GONZALES after dissolution of Gonzales & Gonzales, GP which were not settled or resolved as of the date of dissolution of the marriage, which is February 25, 2013. This share shall be calculated after the party who advanced the out-of-pocket cases expenses is reimbursed. However, in the event he expense was paid by Gonzales & Gonzales, GP, then such case expense amount shall be paid fifty percent (50%) to NASH JESUS GONZALES and fifty percent (50%) to MARISSA ANN GONZALES.

TBC

H-9.    Forty percent (40%) of any fees earned on the Gonzales & Gonzales, GP unsettled cases retained by MARISSA GONZALES after dissolution of Gonzales & Gonzales, GP which were not settled or resolved as of the date of dissolution of the marriage, which is February 25, 2013.    This share shall be calculated after the party who advanced the out-of-pocket cases expenses is reimbursed.    However, in the event he expense was paid by Gonzales & Gonzales, GP, then such case expense amount shall be paid fifty percent (50%) to NASH JESUS GONZALES and fifty percent (50%) to MARISSA ANN GONZALES.

H-10.    Fifty percent (50%) of any fees earned on the Gonzales & Gonzales, GP unsettled cases which were referred to another attorney for handling.    This share shall be calculated after the party who advanced the out-of-pocket expense is reimbursed.    However, in the event the expense was paid by Gonzales & Gonzales, GP, then such expense amount shall be paid fifty percent (50%) to NASH JESUS GONZALES and fifty percent (50%) to MARISSA GONZALES.

H-11.    Subject to the property division set out in the foregoing H-7 through H-10, NASH JESUS GONZALES is awarded as his separate property his ownership interest in and/or his shares in his new law firm, Gonzales & Gonzales, P.C.    However, nothing in this paragraph shall be interpreted to modify the property division set out in paragraphs H-7 through H-10.

## Property to Wife

IT IS ORDERED AND DECREED that the wife, MARISSA ANN GONZALES, is awarded the following as her sole and separate property, and the husband is divested of all right, title, interest, and claim in and to that property:

W-1.    All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the wife or subject to her sole control.

W-2.    All clothing, jewelry, and other personal effects in the possession of the wife or subject to her sole control.

W-3.    All sums of cash in the possession of the wife or subject to her sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the wife's sole name or from which the wife has the sole right to withdraw funds or which are subject to the wife's sole control, including but not limited to:

    a.    Bank of America Account XX█████ and
    b.    Bank of America Account XX█████

W-4.    The individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance benefits in the wife's name, including but not limited to:

    a.    The Fulbright & Jaworski Retirement Benefits;
    b.    Morgan Stanley IRA XXX███ and
    c.    Morgan Stanely SEP XXX███

GONZALES FINAL DECREE OF DIVORCE - Page 26 of 35
{W0575005.9}

TBC

W-5.   All policies of life insurance (including cash values) insuring the wife's life.

W-6.   The 2001 Lexus ES300 motor vehicle, together with all prepaid insurance, keys, and title documents.

W-7.   Fifty percent (50%) of any fees earned on the Gonzales & Gonzales, GP cases which were settled or resolved prior to the date of dissolution of the marriage, which is February 25, 2013. This share shall be calculated after the party who advanced the out-of-pocket case expenses is reimbursed. However, in the event he expense was paid by Gonzales & Gonzales, GP, then such case expense amount shall be paid fifty percent (50%) to NASH JESUS GONZALES and fifty percent (50%) to MARISSA ANN GONZALES.

W-8.   Forty percent (40%) of any fees earned on the Gonzales & Gonzales, GP unsettled cases retained by NASH JESUS GONZALES after dissolution of Gonzales & Gonzales, GP which were not settled or resolved as of the date of dissolution of the marriage, which is February 25, 2013. This share shall be calculated after the party who advanced the out-of-pocket cases expenses is reimbursed. However, in the event he expense was paid by Gonzales & Gonzales, GP, then such case expense amount shall be paid fifty percent (50%) to NASH JESUS GONZALES and fifty percent (50%) to MARISSA ANN GONZALES.

W-9.   Sixty percent (60%) of any fees earned on the Gonzales & Gonzales, GP unsettled cases retained by MARISSA GONZALES after dissolution of Gonzales & Gonzales, GP which were not settled or resolved as of the date of dissolution of the marriage, which is February 25, 2013. This share shall be calculated after the party who advanced the out-of-pocket cases expenses is reimbursed. However, in the event he expense was paid by Gonzales & Gonzales, GP, then such case expense amount shall be paid fifty percent (50%) to NASH JESUS GONZALES and fifty percent (50%) to MARISSA ANN GONZALES.

W-10.  Fifty percent (50%) of any fees earned on the Gonzales & Gonzales, GP unsettled cases which were referred to another attorney for handling. This share shall be calculated after the party who advanced the out-of-pocket expense is reimbursed. However, in the event the expense was paid by Gonzales & Gonzales, GP, then such expense amount shall be paid fifty percent (50%) to NASH JESUS GONZALES and fifty percent (50%) to MARISSA GONZALES.

W-11.  Subject to the property division set out in the foregoing W-7 through W-10, MARISSA GONZALES is awarded as her separate property her new law firm, the Law Offices of Marissa Maggio a/k/a the Law Offices of Marissa Maggio Gonzales. However, nothing in this paragraph shall be interpreted to modify the property division set out in paragraphs W-7 through W-10.

Division of Debt

Debts to Husband

IT IS ORDERED AND DECREED that the husband, NASH JESUS GONZALES, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge, these items:

H-1.   All debts, charges, liabilities, and other obligations incurred solely by the husband from and after September 12, 2011 unless express provision is made in this decree to the contrary.

H-2.   The following debts, charges, liabilities, and obligations:

    a.      Any liabilities in connection with the property awarded to husband;
    b.      All credit cards solely in husband's name;
    c.      50% of the AMEX X█
    d.      50% of the Visa, ML, Bank of America XX█
    e.      50% of the Visa, ML, Bank of America XX█
    f.      50% of the BBVA Compass Line of Credit X█ and
    g.      Any loans from his retirement account(s).

H-3.   The sum of $44,815.39 to MARRISA GONZALES for her equal share of the net proceeds of the Gonzales & Gonzales, GP cases settled after dissolution of Gonzales & Gonzales, GP and prior to the dissolution of the marriage, which is February 25, 2013.

## Debts to Wife

IT IS ORDERED AND DECREED that the wife, MARISSA GONZALES, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the husband and his property harmless from any failure to so discharge, these items:

W-1.   All debts, charges, liabilities, and other obligations incurred solely by the wife from and after September 12, 2011 unless express provision is made in this decree to the contrary.

W-2.   The following debts, charges, liabilities, and obligations:

    a.      Any liabilities in connection with the property awarded to wife;
    b.      All credit cards solely in wife's name;
    c.      50% of the AMEX XX█
    d.      50% of the Visa, ML, Bank of America XX█
    e.      50% of the Visa, ML, Bank of America XX█
    f.      50% of the BBVA Compass Line of Credit X
    g.      100% of the Frost Bank Line of Credit XX█; and
    h.      100% of any loans owed to wife's parents.

## Notice

TBC

IT IS ORDERED AND DECREED that each party shall send to the other party, within three days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

### *Children's Property*

IT IS ORDERED that MARISSA ANN GONZALES shall be the custodian of the following educational accounts held for the benefit of the parties' children and have the exclusive right to manage such accounts:

1.   529 Plan for B█████G████████, Account # xx█████████ and
2.   529 Plan for G███T G███████, Account # xx█████████

IT IS ORDERED that the funds held in the aforementioned accounts shall only be used for each child's qualified educational expenses under such plans. NASH JESUS GONZALES shall have the right to any statements on these accounts and MARISSA ANN GONZALES is ORDERED to provide a copy of all such account statements to NASH JESUS GONZALES within ten business days of receipt.

### *Federal Income Taxes*

#### Federal Income Taxes for Prior Years Through 2012

IT IS ORDERED AND DECREED that MARISSA ANN GONZALES shall be responsible for fifty percent (50%) and NASH JESUS GONZALES shall be responsible for fifty percent (50%) of all federal income tax liabilities of the parties for any year of the parties' marriage in which a joint federal income tax return was filed through December 31, 2012. NASH JESUS GONZALES is ORDERED to timely pay his share of income taxes owed by the parties through December 31, 2012 and shall indemnify and hold the other party and the other party's property harmless from any tax deficiencies, assessments, penalties, and/or interest due, including any attorneys' or accountants' fees incurred in connection with an audit of the parties' joint returns for prior years, unless such additional tax, penalty, and/or interest resulted from a party's omission of taxable income or claim of erroneous deductions. In such case, the portion of the tax, penalty, and/or interest relating to the omitted income or claims of erroneous deductions shall be paid by the party who failed to report the income or proffered the erroneous deduction. The parties agree that nothing in this Decree shall be construed as or is intended as a waiver of any rights that party has under the "innocent spouse" provisions of the Internal Revenue Code.

#### Income Tax Refunds for Prior Years

In the event there is a refund of taxes for prior years of the marriage through December 31, 2012, it is ORDERED AND DECREED that MARISSA ANN GONZALES shall be entitled to fifty percent (50%) and NASH JESUS GONZALES shall be entitled to fifty percent (50%) of such refund. IT IS ORDERED AND DECREED that the party who receives a refund check is designated a constructive trustee for the benefit of the other party for the amount of any refund.

TBC

The party who receives a refund check IS ORDERED to endorse, upon receipt, any check received for a refund of taxes for any prior year of the marriage through December 31, 2012 and shall forward any such refund check to the other party within three (3) days of receipt and the other party shall pay the party who endorsed the refund check that party's share of the income tax refund within five days from the date the endorsed check is received.

### Preparation and Filing of the Parties' 2012 Taxes

IT IS ORDERED AND DECREED that both parties shall cooperate with their routine tax preparer in the preparation and filing of income taxes for the tax year 2012 to be prepared in accordance with the Internal Revenue Code that results in the lowest aggregate tax obligation for the parties. IT IS ORDERED AND DECREED that the parties will supply to their routine tax preparer all information necessary for the preparation of the return(s). Both parties are ORDERED to provide the information to their routine tax preparer within ten days of any request for the information but no later than March 31, 2013. IT IS ORDERED that any additional information received by either party after March 31, 2013 will be forwarded to the tax preparer within three days of its receipt by the receiving party. MARISSA ANN GONZALES is ORDERED to pay fifty percent (50%) and NASH JESUS GONZALES is ORDERED to pay fifty percent (50%) of the fees owed to the tax preparer for preparation of the return(s) within ten days of receipt of the bill. IT IS ORDERED that either party who desires to have the tax return(s) reviewed by an independent tax preparer will be solely responsible for those costs incurred.

### Federal Income Tax Liabilities for Year of Divorce-2013

IT IS ORDERED that MARISSA ANN GONZALES and NASH JESUS GONZALES shall file separate income tax returns for 2013, pursuant to section 66, Internal Revenue Code. IT IS ORDERED that NASH JESUS GONZALES shall report on his 2013 federal income tax return (1) all earned income including wages, salaries, management fees, fees for contract labor, consulting fees, or professional fees, and other amounts received as compensation for personal services actually rendered by NASH JESUS GONZALES; (2) trade or business income, and a partner's distributive share of partnership income; (3) income which is derived from the property awarded or confirmed to NASH JESUS GONZALES by this Decree of Divorce; and (4) any other income received by NASH JESUS GONZALES and properly reportable by him under the Internal Revenue Code; and NASH JESUS GONZALES shall claim and deduct (1) all deductible expenditures paid by him; (2) deductible expenditures, depreciation, and losses attributable to property awarded or confirmed to NASH JESUS GONZALES in this Decree of Divorce; (3) all income withheld from his earned income; (4) all prepayments personally paid by him for the year 2013; and (5) non-payment credits attributable to his earnings or property awarded or confirmed to NASH JESUS GONZALES by this Decree of Divorce. IT IS ORDERED that MARISSA ANN GONZALES shall report on her 2013 federal income tax return (1) all earned income including wages, salaries, management fees, fees for contract labor, consulting fees, or professional fees, and other amounts received as compensation for personal services actually rendered by MARISSA ANN GONZALES; (2) trade or business income, and a partner's distributive share of partnership income; (3) income which is derived from the property awarded or confirmed to MARISSA ANN GONZALES by this Decree of Divorce; and (4) any other income received by MARISSA ANN GONZALES and properly reportable by her under the Internal Revenue Code; and MARISSA ANN GONZALES shall claim and deduct (1) all

deductible expenditures paid by her; (2) deductible expenditures, depreciation, and losses attributable to property awarded or confirmed to MARISSA ANN GONZALES in this Decree of Divorce; (3) all income withheld from her earned income; (4) all prepayments personally paid by her for the year 2013; and (5) non-payment credits attributable to her earnings or property awarded or confirmed to MARISSA ANN GONZALES by this Decree of Divorce.

### Deductions Attributable to Jointly Owned Property

Notwithstanding the above provisions, IT IS ORDERED AND DECREED that any deductions attributable to taxes paid on any property jointly owned by the parties in 2012 but paid in 2013 shall be split equally by the parties.

IT IS FURTHER ORDERED AND DECREED that NASH JESUS GONZALES shall pay and hold MARISSA ANN GONZALES her property harmless from all tax liability shown to be due and payable on NASH JESUS GONZALES's 2013 federal income tax return prepared pursuant to Section 66, Internal Revenue Code as hereinabove provided, plus any penalty and interest referable thereto, and IT IS ORDERED AND DECREED that MARISSA ANN GONZALES shall pay and hold NASH JESUS GONZALES and his property harmless from all tax liability shown to be due and payable on MARISSA ANN GONZALES's 2013 federal income tax return prepared pursuant to Section 66, Internal Revenue Code as hereinabove provided, plus any penalty and interest referable thereto.

IT IS ORDERED AND DECREED that any tax refund shown to be due and payable to NASH JESUS GONZALES on his 2013 federal income tax return, prepared pursuant to Section 66, Internal Revenue Code as hereinabove provided, shall be the separate property of NASH JESUS GONZALES, and any tax refund shown to be due and payable to MARISSA ANN GONZALES on her 2013 federal income tax return, prepared pursuant to Section 66, Internal Revenue Code as hereinabove provided, shall be the separate property of MARISSA ANN GONZALES.

To the extent necessary to effect this division of tax liability for income received in 2013, IT IS ORDERED AND DECREED that this Decree of Divorce shall serve as a partition of income, setting aside to NASH JESUS GONZALES as his separate property (1) all earned income including wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered by NASH JESUS GONZALES; (2) trade or business income, and a partner's distributive share of partnership income; (3) income which is derived from the property awarded or confirmed to NASH JESUS GONZALES by this Decree of Divorce; (4) any other income confirmed to NASH JESUS GONZALES and properly reportable by him under the Internal Revenue Code; (5) all deductible expenditures paid by him; (6) deductible expenditures, depreciation, and losses attributable to property awarded or confirmed to NASH JESUS GONZALES by this Decree of Divorce; (7) all income tax withheld from his earned income; (8) all prepayments personally paid by him for the tax year 2013; and (9) non-payment credits attributable to his earnings or property awarded or confirmed to NASH JESUS GONZALES by this Decree of Divorce; which are earned, generated or accruing between and including January 1, 2013, and the date of divorce; and setting aside to MARISSA ANN GONZALES as her separate property (1) all earned income including wages, salaries, or

professional fees, and other amounts received as compensation for personal services actually rendered by MARISSA ANN GONZALES; (2) trade or business income, and a partner's distributive share of partnership income; (3) income which is derived from the property awarded or confirmed to MARISSA ANN GONZALES by this Decree of Divorce; (4) any other income confirmed to MARISSA ANN GONZALES and properly reportable by her under the Internal Revenue Code; (5) all deductible expenditures paid by her; (6) deductible expenditures, depreciation, and losses attributable to property awarded or confirmed to MARISSA ANN GONZALES by this Decree of Divorce; (7) all income tax withheld from her earned income; (8) all prepayments personally paid by her for the tax year 2013; and (9) non-payment credits attributable to her earnings or property awarded or confirmed to MARISSA ANN GONZALES by this Decree of Divorce; which are earned, generated or accruing between and including January 1, 2013, and the date of divorce.

IT IS FURTHER ORDERED AND DECREED that this partition is made under the provisions of the Texas Constitution, Article XVI, Section 15, as amended November 25, 1980 and November 3, 1987, which provides that:

"Spouses...may by written instrument from time to time partition between themselves all or any part of their property then existing or to be acquired or exchanged between themselves the community interest of one spouse...in other community property then existing or to be acquired, whereupon the portion or interest set aside to each spouse...shall be and constitute a part of the separate property and estate of such spouse..."

and in accordance with the Texas Family Code, Subsections 4.102, 4.103, 4.104, 4.105, and 4.106 (as amended).

IT IS ORDERED AND DECREED that NASH JESUS GONZALES shall be solely responsible for and shall timely pay and shall indemnify and hold MARISSA ANN GONZALES and her property harmless from all federal income tax liabilities as shown on his 2013 federal income tax return, and NASH JESUS GONZALES shall bear all costs of defending against same.

IT IS ORDERED AND DECREED that MARISSA ANN GONZALES shall be solely responsible for and shall timely pay and shall indemnify and hold NASH JESUS GONZALES and his property harmless from all federal income tax liabilities as shown on her 2013 federal income tax return, and MARISSA ANN GONZALES shall bear all costs of defending against same.

IT IS ORDERED AND DECREED that each party shall pay for the preparation of his or her separate return for the year 2013.

General Provisions Related to Federal Income Taxes

TBC

The parties agree that nothing in this Decree shall be construed as or is intended as a waiver of any rights that party has under the "innocent spouse" provisions of the Internal Revenue Code.

Each party shall forward immediately to the other party a copy of any deficiency notice or other correspondence from the Internal Revenue Service concerning tax years for which a joint return has been filed.

IT IS ORDERED AND DECREED that each party shall preserve for a period of seven years from the date of divorce all financial records relating to the community estate. Each party is ORDERED to allow the other party access to these records to determine acquisition dates or tax basis or to respond to an IRS examination within five days of receipt of written notice from the other party. Access shall include the right to copy the records.

IT IS FURTHER ORDERED AND DECREED that each party shall furnish such information to the other party as is requested to prepare federal income tax returns for each party for the year in which this divorce decree is entered, and in no event shall such information be exchanged later than March 1 of the year following the year in which this divorce decree is entered. Each party shall pay for the preparation of his or her own tax return for the year in which this divorce decree is entered.

## Attorney's Fees

Except as provided for below, each party shall be responsible for his or her own attorney's fees, expenses, and costs incurred as a result of legal representation in this case.

Notwithstanding the foregoing, IT IS ORDERED that good cause exists to award MARISSA ANN GONZALES judgment in the amount of $10,000.00 for attorney's fees incurred by MARISSA ANN GONZALES, with interest at five percent per year compounded annually from the date of the judgment is signed until paid. The judgment, for which let execution issue, is awarded against NASH JESUS GONZALES.

## Court Costs

IT IS ORDERED AND DECREED that costs of court are to be borne by the party who incurred them.

## Discharge from Discovery Retention Requirement

IT IS ORDERED AND DECREED that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with rule 191.4(d) of the Texas Rules of Civil Procedure.

## Indemnification

TBC

Each party represents and warrants that he or she has not incurred any outstanding debt, obligation, or other liability on which the other party is or may be liable, other than those described in this decree. Each party agrees and IT IS ORDERED that if any claim, action, or proceeding is hereafter initiated seeking to hold the party not assuming a debt, an obligation, a liability, an act, or an omission of the other party liable for such debt, obligation, liability, act or omission of the other party, that other party will, at his or her sole expense, defend the party not assuming the debt, obligation, liability, act, or omission of the other party against any such claim or demand, whether or not well founded, and will indemnify the party not assuming the debt, obligation, liability, act, or omission of the other party and hold him or her harmless from all damages resulting from the claim or demand.

Damages, as used in this provision, includes any reasonable loss, cost, expense, penalty, and other damage, including without limitation attorney's fees and other costs and expenses reasonably and necessarily incurred in enforcing this indemnity.

IT IS ORDERED that the indemnifying party will reimburse the indemnified party, on demand, for any payment made by the indemnified party at any time after the entry of the divorce decree to satisfy any judgment of any court of competent jurisdiction or in accordance with a bona fide compromise or settlement of claims, demands, or actions for any damages to which this indemnity relates.

The parties agree and IT IS ORDERED that each party will give the other party prompt written notice of any litigation threatened or instituted against either party that might constitute the basis of a claim for indemnity under this decree.

### Change of Name

IT IS ORDERED that the name of MARISSA ANN GONZALES is changed to MARISSA ANN MAGGIO.

### Clarifying Orders

Without affecting the finality of this Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

### Relief Not Granted

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable.

**Date of Judgment**

SIGNED on this ___ day of November, 2013

_____
HON. LORA LIVINGSTON

**AGREED AS TO FORM ONLY:**

_____
Jeff Miller
Attorney for Marissa Gonzales

_____
Tom Cowart
Attorney for Nash Gonzales

GONZALES FINAL DECREE OF DIVORCE - Page 35 of 35
{W0575005.9}

*Date of Judgment*

        SIGNED on this ____ day of November, 2013

_____
HON. LORA LIVINGSTON

**AGREED AS TO FORM ONLY:**

_____
Jeff Miller
Attorney for Marissa Gonzales

_____
Tom Cowart
Attorney for Nash Gonzales